# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-4093

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEFF PAWLINSKI,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 03-CR-51—**Charles N. Clevert, Jr.**, *Judge.*

_____

ARGUED MAY 26, 2004—DECIDED JULY 2, 2004

_____

Before BAUER, POSNER, and COFFEY, *Circuit Judges.*

POSNER, *Circuit Judge.* Jeff Pawlinski, who was then a
Milwaukee alderman, pleaded guilty to having defrauded
contributors to the campaign fund maintained by the
"Pawlinski for Alderman" campaign committee of approxi-
mately $40,000, in violation of the federal mail fraud statute,
18 U.S.C. § 1341, by using the contributors' money for pur-
poses unrelated to the campaign. As part of his sentence,
Pawlinski was ordered to pay restitution of $39,324.03, with
the money to be deposited in the first instance in the district
court; and he did this. The court then notified the contribu-

tors to the campaign fund that they might be entitled to reimbursement. None of the contributors, as far as we know, has been accused of any impropriety in having contributed to Pawlinski's campaign, even though the plea agreement states that the campaign fund received corporate contributions and Wisconsin law forbids corporations to make campaign contributions. Wis. Stat. §§ 11.38(1)(a)(1), .38(4). But only a handful of contributors stepped forward and their claims added up to a mere $1,850.

Pawlinski's lawyer suggested that the unclaimed balance be returned to the "Pawlinski for Alderman" campaign fund, which would then be dissolved and the money in it distributed in accordance with Wisconsin law. Pawlinksi disclaimed any right to the money himself. The government expressed indifference between the court's returning the money to the campaign fund and giving it to the Crime Victims Fund of the U.S. Treasury. 42 U.S.C. § 10601(a). The Crime Victims Fund, which finances services to victims of crime, 42 U.S.C. §§ 10602-10603, is funded by criminal fines, forfeited bail bonds, penalty fees, and special assessments collected by the Department of Justice, the federal courts, and other federal agencies. 42 U.S.C. § 10601(b); http://www.ojp.usdoj.gov/ovc/ncvrw/cvfa/2002/fundawards.html. The judge amended the order of restitution to direct that the money go to the Fund.

Pawlinski appeals from the amended order and is met at the threshold by the government's contention that he has no standing to challenge the amended judgment because he has no stake in the money that had been deposited in the district court, having renounced, as we noted, any claim to it. It is true that he has no ownership interest in the money. But it is untrue that he has no financial interest in who receives the money. Under Wisconsin law, money obtained by a political campaign in violation of the prohibition against corporate

contributions (acceptance of such contributions being a violation of Wis. Stat. § 11.38(1)(b)) must either be returned to the contributors or donated to the state's "common school fund" or to a charitable organization. Wis. Stat. § 11.38(6). (Another option was added by 2001 Wis. Laws 109, but the statute was held unconstitutional, *Wisconsin Realtors Ass'n v. Ponto*, 233 F. Supp. 2d 1078, 1093 (W.D. Wis. 2002); see also *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 490-92 (7th Cir. 2004), so we ignore that option.)

In addition, and in some tension with section 11.38(6), a candidate who wants to wind up his campaign fund may not do so until the campaign's debts are paid in full. Wis. Stat. § 11.19(1). When that is done, the fund can be terminated and any balance remaining upon termination "may be used for any political purpose not prohibited by law, returned to the donors in an amount not exceeding the original contribution, transferred to the [election] board for deposit in the Wisconsin election campaign fund or donated to a charitable organization or the common school fund." *Id.*

Pawlinski acknowledges that he violated Wisconsin law—not only the prohibition against accepting corporate corporations, but also and more fundamentally the prohibition in Wis. Stat. § 11.25(2)(a) against using "moneys solicited for political purposes for a purpose which is other than political"—as well as federal law (the mail fraud statute). And though we cannot find a case on point, or a pertinent statute or regulation, it is highly unlikely that the fact that the fund is now empty would relieve him from any of the financial consequences of his illegalities. He stole the $39,324.03 that he has been ordered to make restitution of, and presumably he has to make that loss good so that the fund's assets can be put to their statutorily designated uses.

We cannot be absolutely certain of this; there are civil fines and criminal penalties for violations of Wisconsin campaign-finance laws, see Wis. Stat. §§ 11.60, .61, and

conceivably they're intended to be exclusive. And it is almost certainly too late for any more contributors, corporate or otherwise, to claim restitution, in view of the time limits in 18 U.S.C. § 3664(d)(5), though those limits can sometimes be bent. *United States v. Grimes*, 173 F.3d 634, 638-40 (7th Cir. 1999); *United States v. Zakhary*, 357 F.3d 186, 191-93 (2d Cir. 2004); *United States v. Terlingo*, 327 F.3d 216, 218-23 (3d Cir. 2003); *United States v. Dando*, 287 F.3d 1007, 1009-11 (10th Cir. 2002); *United States v. Vandeberg*, 201 F.3d 805, 813-14 (6th Cir. 2000). Anyway the district court's coffer is empty except for the slight amount set aside for the contributors who have applied for reimbursement—the Crime Victims Fund has the rest. But all that's important is that the state *may* be able to order Pawlinski to restore the stolen money to the fund.

He has an additional financial interest in having the unclaimed balance of the amount he deposited in the district court returned to the campaign fund rather than sequestered by the Crime Victims Fund. He has campaign debts, and we know from Wis. Stat. § 11.19(1) that the campaign's debts must be paid before the fund is terminated. Again, there is uncertainty. There are no assets in the campaign fund any more, and we do not know whether the debts are a personal obligation of the candidate. Maybe the only liable entity is the "Pawlinski for Alderman" campaign committee; that might depend on the terms of the contracts between the committee and its creditors, a matter on which the record is silent. Still a further wrinkle is that Wisconsin may consider the Crime Victims Fund an appropriate charity to receive the unclaimed balance in the terminated campaign fund. See Wis. Stat. § 11.01(2), defining "charitable organization" to include the United States and "any political subdivision thereof."

Amidst this welter of uncertainty the fact remains that if the money originally deposited in the district court and not

claimed by the contributors isn't returned to the campaign fund, then any money that Pawlinski owes by virtue of Wisconsin law, as a consequence of either his fraud or simply his campaign debts, may come out of his pocket. The fact that the injury done him by the amended judgment is probabilistic rather than certain does not deprive him of standing. E.g., *Cook Inc. v. Boston Scientific Corp.*, 333 F.3d 737, 743-44 (7th Cir. 2003). The probability does not seem negligible, though no stronger statement is possible—an additional doubt being whether the U.S. Treasury will return the money that the judge sent to the Crime Victims Fund if the judge's order is reversed.

Having satisfied ourselves that Pawlinski has standing to maintain this appeal, we turn to the merits, where the issue is the lawfulness of the judge's shipping to the Crime Victims Fund the unclaimed balance of the amount that Pawlinski had been ordered to pay by way of restitution. The original order of restitution was based on the Mandatory Victims Restitution Act of 1996, which requires restitution in the case of certain federal crimes, including mail fraud. 18 U.S.C. § 3663A(c)(1)(A)(ii); *United States v. Grice*, 319 F.3d 1174, 1177 (9th Cir. 2003) (per curiam). An order of restitution under that statute (and no other basis for the order is suggested) must go to victims of the defendant's crimes, and the Crime Victims Fund is neither a victim of Pawlinski nor a representative of his victims. There are only two exceptions, other than for certain drug crimes, see 18 U.S.C. § 3663(c): if the order is imposed pursuant to a plea agreement which provides for restitution to nonvictims, or if the victims assign their right to restitution to the Crime Victims Fund. 18 U.S.C. §§ 3663A(a)(3), 3664(g)(2). Neither exception is applicable to this case. There has been no as-signment, and the defendant merely "agree[d] to pay resti-tution as ordered by the court." Compare *United States v. Peterson*, 268 F.3d 533 (7th Cir. 2001), where the defendant

"promised to pay restitution for 'all losses relating to the offense of conviction and all losses covered by the same course of conduct or common scheme or plan as the offense of conviction.' " *Id.* at 533-34.

The government argues that "in the absence of a clear statutory directive, the sentencing court was free to 'exercise its discretion in fashioning a restitution order,' 18 U.S.C. § 3664(a)." But the quotation is cropped and misleading. With context restored, its irrelevance and the baselessness of arguing that the district court has discretion to order restitution to nonvictims other than as authorized by the statute become evident. Here is the sentence in which the quotation appears: "For orders of restitution under this title, the court shall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order." The discretion goes to the form of the order—the identity of the victims, the amount owed each, and similar details necessary to the formulation of a specific order. E.g., *United States v. Sensmeier*, 361 F.3d 982, 988 (7th Cir. 2004); *United States v. Rhodes*, 330 F.3d 949, 953 (7th Cir. 2003); *United States v. Wood*, 364 F.3d 704, 714 (6th Cir. 2004); *United States v. Osborne*, 332 F.3d 1307, 1314 (10th Cir. 2003). It is not discretion to ignore the statutory limits on when nonvictims may be included in a restitution order. Federal courts cannot order restitution in a criminal case without a statutory basis. *United States v. Randle*, 324 F.3d 550, 555 (7th Cir. 2003); *United States v. Hensley*, 91 F.3d 274, 276 (1st Cir. 1996); *United States v. Snider*, 957 F.2d 703, 706 (9th Cir. 1992) (per curiam).

The sentence was illegal. *United States v. Wolf*, 90 F.3d 191, 194 (7th Cir. 1996). The government even acknowledges, in its brief, that the judge's amended order is "afield from the

statutory framework governing restitution"; but it argues that if the sentence was therefore unlawful, still the judge's error was not a "plain error" and can therefore be forgiven. We do not understand the argument. The doctrine of plain error is meant for cases in which a defendant forfeits a ground in the district court yet then presents it to the appellate court (or maybe the appellate court notices it on its own) as a basis for reversal. E.g., *United States v. Cotton*, 535 U.S. 625, 631-32 (2002); *United States v. Olano*, 507 U.S. 725, 732-37 (1993). Remember that in the district court, after it was discovered that most of the victims of Pawlinski's fraud would not be asking for restitution, Pawlinski urged that the money be returned to the campaign fund. He never suggested that it should go to the Crime Victims Fund instead. When the government proposed that as an alternative destination (while expressing indifference between it and the campaign fund), Pawlinski repeated that he wanted the money to go to the campaign fund instead of to the Crime Victims Fund. There was thus no forfeiture of the argument against sending the money to the Crime Victims Fund, and hence there is no occasion to consider whether the judge's error was not merely error, but plain error. In fact it *was* plain error, because there was not even an arguable basis for what he did and because the entry of an illegal sentence is a serious error routinely corrected on plain-error review. E.g., *United States v. Randle*, *supra*, 324 F.3d at 558; *United States v. Noble*, 246 F.3d 946, 955-56 (7th Cir. 2001); *United States v. Ubakanma*, 215 F.3d 421, 427-29 (4th Cir. 2000); *United States v. Rodriguez*, 938 F.2d 319, 320-22 (1st Cir. 1991).

The judge erred in directing that the money that Pawlinski stole from his campaign fund be given to the Crime Victims Fund. The order of restitution must be vacated as to the remaining balance because, as we have emphasized, the conditions for restitution to nonvictims have not been

satisfied. What happens to the money that the judge dispatched to the Crime Victims Fund will be an issue between Wisconsin, the U.S. Department of Justice, which administers the Fund, 42 U.S.C. § 10605, and possibly the U.S. Treasury as well.

REVERSED AND REMANDED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*