**UNITED STATES of America**

v.

**Brett HAMBURGER, Defendant.**

**No. 01 CR 917(ILG).**

United States District Court, E.D. New York.

Feb. 13, 2006.

Mary M. Dickman, Assistant U.S. Attorney, Brooklyn, NY, for the Government.

Steven M. Kaplan, New York City, for Defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

### INTRODUCTION

On March 12, 2003, after pleading guilty to conspiracy to commit securities fraud, Defendant Hamburger was sentenced to a term of probation and ordered to pay $290,000 in restitution, in $1000 monthly installments.

Hamburger now seeks, pursuant to *18 U.S.C. § 3583(e)(2)*, a reduction in the restitution order on the condition that he pay his remaining restitution balance within thirty days, and that on the payment of that amount, he be discharged from probation. In the alternative he seeks credit against his restitution obligation for stock he transferred to Freeman.

Section 3583(e)(2) applies to modification of terms of supervised release after imprisonment, not modification of terms of probation. Thus, the Court construes Hamburger's motion as arising under § 3563(c), which provides for the modification of probation.

### BACKGROUND

During the period from November 1995 through November 1997, Hamburger, a stockbroker, misled customers of Euro–Atlantic Securities ("Euro–Atlantic") with regard to the purchases and sales of "house stocks" controlled by supervisors at Euro–Atlantic. Hamburger was personally responsible for approximately $340,000 in losses. The primary victim of his fraud was Earl Freeman, who was defrauded of $198,415.

In 2000, Hamburger moved to Indonesia where he became a legal permanent resident. Some time thereafter, Freeman obtained a civil judgment against Hamburger for the losses Hamburger caused. On August 15, 2001, Hamburger was indicted on the securities fraud charges. He remained a fugitive until November 2002, when he ultimately returned to the United States on terms his attorney negotiated with the government, to face the criminal charges.

Prior to returning from Indonesia, Hamburger, through counsel, obtained a settlement agreement from Freeman in September 2002. By the terms of that agreement, Freeman released all claims against Hamburger in consideration of an immediate $32,000 payment, and the promise that Hamburger would pay him a balance of $18,000 in $500 monthly installments beginning in January 2003. (*See Kaplan Certification*, Exhibit B ("Settlement Agreement")).

On November 25, 2002, having returned from Indonesia earlier that month, Hamburger pled guilty to conspiracy to commit securities fraud in violation of *18 U.S.C. § 371*. He was sentenced on March 12, 2003 to a five-year term of probation, including ten months of home detention. He was also ordered to pay $290,000 in restitution, in accordance with *18 U.S.C. § 3663A*, based on the probation department's assessment that Hamburger had caused approximately $340,000 loss and in consideration of the $50,000 civil settlement into which Hamburger and Freeman entered. The Court ordered Hamburger to continue to pay $500 per month directly

to Freeman and $500 per month to the Clerk of the Court, as an intermediary for the other victims, until full restitution was made.

Mr. Hamburger has apparently paid Freeman a total of $50,000 and obtained a signed general release of claims from Freeman in accordance with the settlement agreement. (*See Kaplan Certification,* Exhibit D.). He has also paid $9,500 to the Clerk of the Court for disbursement to his other victims. In accordance with the restitution order, then, his current outstanding restitution would be $230,500, with $148,415 attributable to Freeman, and the balance of $82,085 payable to the Clerk of the Court for his other victims.[1]

Hamburger has also delivered 20,000 shares of "Espre Solutions, Inc." and 25,000 shares of "Bio Defense Corporation" to Freeman in consideration of his release of claims. The Espre Solutions stock shares are restricted, and "have not been registered under the Securities Act of 1933, as amended ... and may not be offered, sold, or otherwise transferred in the absence of an effective registration." (*Kaplan Reply Cert.* Exhibit A). Defendant concedes that "[t]here is presently no public trading market for the shares of Bio Defense Corporation." (*Id.,* ¶ 4).

Hamburger now asks the Court (1) to relieve him of the balance of the restitution directed towards Mr. Freeman, (2) to accept full payment of the balance of his restitution obligations to the other victims, and (3) to terminate his probation.[2] In the alternative, Hamburger seeks credit against his restitution obligation for the value of the shares of stock transferred to Freeman.

## DISCUSSION

This motion presents five issues for the Court's consideration: (1) Whether a preceding civil settlement with one victim of a defendant's offense limits the court's obligation to impose restitution in excess of that settlement amount pursuant to *18 U.S.C. § 3663A* (the Mandatory Victim Restitution Act, "MVRA"); (2) Whether this Court has the authority under *18 U.S.C. § 3563* to modify the restitution order imposed on Hamburger; (3) What effect a victim's renunciation of his interest in receiving restitution has on the fulfillment of an offender's restitution obligations; (4) Whether Hamburger should be given credit for stock he transferred to one of his victims; and (5) Whether Hamburger should be relieved of probation.

## I. The Propriety of the Restitution Order

Hamburger predicates his motion on the proposition that in consideration of the pre-existing settlement agreement between him and his victim, the Court should have limited its imposition of restitution to Freeman to the civil settlement amount. Though the Second Circuit has not spoken directly on the issue of what impact a civil settlement agreement has on a subsequent restitution order, the court has spoken clearly in a closely related matter when it wrote that "a district court may—indeed, must—impose orders of restitution on defendants convicted of crimes identified in the MVRA even if their victims decline

---

1. The parties dispute the total balance remaining to Hamburger's other victims. The government believes the balance to be $76,610 while defendant believes the amount to be $67,265. The failure of the parties to resolve their difference amicably and the Court being advised of that fact, a hearing will be held to determine the outstanding amount.

2. The Probation Department has not responded to Hamburger's requests for early termination of probation.

restitution. To hold otherwise would be inconsistent with the MVRA's statutory scheme of mandatory restitution." *United States v. Johnson*, 378 F.3d 230, 244 (2d Cir.2004), The Court concluded "that defendants' victims may not veto the obligation of the District Court to impose orders of restitution." *Id.* at 245.

Other Circuits have addressed the issue in light of a related Supreme Court decision, to the uniform conclusion that a preceding civil settlement may only serve to offset, but not preclude, an award of restitution. *See Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (restitution ordered as a condition of probation imposed following a state criminal conviction not a dischargeable debt under Title VII bankruptcy proceeding). *See also U.S. v. Karam*, 201 F.3d 320, 328 (4th Cir.2000) ("A civil settlement does not preclude an award of restitution under the VWPA"[3]); *U.S. v. Sheinbaum*, 136 F.3d 443, 447 (5th Cir.1998) ("That the victim has agreed in a civil proceeding that it has been compensated fully does not prevent a district court from pursuing the rehabilitative and retributive functions of the criminal law served by restitution."); *United States v. Savoie*, 985 F.2d 612, 619 (1st Cir.1993) ("[T]he settlement ... concerns potential civil liability. But, the sort of restitution imposed below is not a civil affair; it is a criminal penalty meant to have deterrent and rehabilitative effects."); *United States v. Vetter*, 895 F.2d 456, 459 (8th Cir.1990) ("[T]he Supreme Court's rationale in *Kelly* applies equally to restitution orders entered as part of a criminal sentence by federal and state courts."); *United States v. Cloud*, 872 F.2d 846, 854 (9th Cir.), *cert. denied*, 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989) ("[the victim] did not waive either a direct or subrogation right to receive VWPA restitution when it settled [the] claim of loss."); *United States v. Hairston*, 888 F.2d 1349, 1355 (11th Cir.1989) (victims entitled to receive restitution as a result of conviction, despite the dismissal with prejudice of their civil action against offender).

In *Kelly v. Robinson*, the Supreme Court considered the interplay between a state restitution system and federal bankruptcy law. The majority characterized restitution orders as serving penological purposes of rehabilitation and punishment, and observed that because the victim has no control over whether restitution is awarded or how it is calculated, "restitution orders ... operate for the benefit of the State ... they are not assessed for compensation of the victim." *Kelly v. Robinson*, 479 U.S. at 53, 107 S.Ct. 353. Because they were deemed to operate for the benefit of the state, and not as compensation for actual pecuniary loss, the Court held that restitution obligations, imposed as conditions of probation in state criminal proceedings, are not dischargeable debts under Chapter VII. *Id.* at 53, 107 S.Ct. 353.[4]

---

**3.** The Victim and Witness Protection Act, ("VWPA"), enacted in 1982 as *18 U.S.C. § 3663* provided the court with discretion to impose restitution orders upon offenders, and is a precursor to MVRA, enacted in 1995, which made restitution mandatory for certain crimes.

**4.** § 523(a)(7) of the Bankruptcy Code provides that a discharge in bankruptcy does not affect any debt that "is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." By concluding that restitution was neither a debt, nor compensation for actual pecuniary loss, the Court safely shored up restitution obligations from discharge under Chapter 11. The Court also emphasized the fundamental policy against federal interference with state criminal prosecutions as another basis for its decision, citing *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

Were this Court writing in the absence of the overwhelming subsequent appellate decisions on the issue, it would distinguish a subsequent bankruptcy proceeding from both a preceding civil settlement between parties and a victim's disclaimer of his interest in receiving restitution, and begin with Justice Marshall's dissent in *Kelly v. Robinson.* In dissent, Justice Marshall found "unconvincing the majority's conclusion that the criminal restitution order . . . is not compensation for actual pecuniary loss." *Id.* at 55, 107 S.Ct. 353. He began with the statute that permitted the lower court to require a defendant "to make restitution of the fruits of his offense or make restitution, in an amount he can afford to pay or provide in a suitable manner, *for the loss or damage caused thereby.*" *Id.* (emphasis added to the original, *Conn.Gen.Stat. § 53a–30(a)(4) (1985).*), and observed that:

> [t]ying the amount of restitution to the amount of actual damage sustained by the victim strongly suggests that the payment is meant to compensate the victim. This comports with the theory underlying restitution sanctions. Restitution is not simply a punishment that incidentally compensates the victim. Indeed, compensation is an essential element of a restitution scheme, under which a wrong to the victim of a crime must be redressed not just by penalizing the offender but by restoring the victim, as far as possible, " 'to the position that [he] would have been in if the original criminal act had never occurred.' "

*Id.* at 55–56, 107 S.Ct. 353 (citing R. Barnett & J. Hagel, *Assessing the Criminal: Restitution, Retribution, and the Legal Process, in Assessing the Criminal: Restitution, Retribution, and the Legal Process* 1, 27 (1977).).

This Court, were it writing on a clean slate, would find Justice Marshall's dissent persuasive. An impartial reading of the federal restitution statutes similarly compels an inference that restitution orders are meant to be compensatory. Sections 3663 and 3663A are rife with references to the value of the property lost by the victims, and the need to reimburse victims, their estates, or others harmed by the crime for the direct and collateral costs associated with the offense; all of which are indicators that the nature of the restitution order is primarily compensatory. *See 18 U.S.C. § 3663(a)(1)(A),* (restitution to victim, victim's estates, or other parties designated by a plea agreement); *Id. § (a)(1)(B)(I)* (calculation of the amount of loss by the victim as a result of the offense); *Id. § (a)(1)(B)(ii)* (appropriateness of court's weighing the need to provide restitution to the victim against the complication and prolongation of the sentence); *Id. § (a)(2)* (emphasizing the victim as the recipient of the restitution award); *Id. § (b)(2)* (reimbursement for medical costs and lost wages); *Id. § (b)(3)* (funeral costs); *Id. § (b)(4)* (costs associated with participating in the prosecution); *Id. §§ 3663A(a)(1), (a)(2)* (emphasizing victim as recipient of restitution order); *Id. § (b)(1)* (calculation of restitution against actual loss); *Id. § (b)(2)* (reimbursement for medical costs, related professional services, and lost wages); *Id. § (b)(3)* (funeral costs); *Id. § (b)(4)* (costs associated with participation in the prosecution). Moreover, the provisions for enforcement, *18 U.S.C. § 3664,* are clearly designed with compensation for the victim's loss as their primary concern. *See, e.g., 18 U.S.C. § 3664(f)(1)(A)* ("In each order of restitution, the court shall order restitution *to each victim in the full amount of each victim's losses* as determined by the court and without consideration of the economic circumstances of the defendant.") (emphasis added). Those references should be compared with § 3663A(c)(1)(A) which would not mandate restitution were the

defendant convicted of victimless crimes such as perjury or obstruction of justice.

The legislative history of the restitution statutes similarly demonstrates that its enactors were concerned primarily with the satisfaction of losses to victims. In its 1982 enactment of MVRA, the legislative report stated that "whatever else the sanctioning power of society does to punish its wrongdoers, it should also ensure that the wrongdoer is required to the degree possible to restore the victim to his or her prior state of well-being." (S. Rept. 97–532 at 30) (Judiciary Committee), Aug. 19, 1982 (to accompany S. 2420). Thirteen years later, observing that "significant strides have been made since 1982 toward a more victim-centered justice system, [but] much progress remains to be made in the area of victim restitution," *S. REP. 104–179* (1995), 13, 1996 *U.S.C.C.A.N.* 924, 926, Congress passed MVRA to make restitution mandatory for certain crimes. The stated purpose of the legislation is to:

> ... ensure that the loss to crime victims is recognized, and that they receive the restitution that they are due. It is also necessary to ensure that the offender realizes the damage caused by the offense and pays the debt owed to the victim as well as to society. Finally, this legislation is needed to replace an existing patchwork of different rules governing orders of restitution under various Federal criminal statutes with one consistent procedure.

*S. REP. 104–179* (1995), 12, 1996 *U.S.C.C.A.N.* 924. The primary purpose is clearly compensation of the victim. Only a crabbed reading of the phrase "as well as to society" in the foregoing statement suggests the additional penological purposes generally ascribed to restitution by the Supreme Court in *Kelly* and the Circuit courts in the cases catalogued *supra.* The most natural reading of the legislative history, as well as the statute, is that restitu-

tion, as an independent, additional component of a sentence intends to compensate the victim for actual losses. The penological purposes of the sentence are accomplished through probation, fines, or imprisonment.

■ That view notwithstanding, the Court of Appeals for this Circuit has held, although not in this context, that "[r]estitution undoubtedly serves traditional purposes of punishment. The prospect of having to make restitution adds to the deterrent effect of imprisonment and fines." *United States v. Brown,* 744 F.2d 905, 909 (2d Cir.1984) (cited in *Johnson,* 378 F.3d at 244). This Court is constrained to follow the cited appellate authority that a pre-existing civil settlement does not limit a court's obligation to order restitution in accordance with *18 U.S.C. § 3663A.* In fashioning a restitution order, a pre-existing civil settlement is properly considered by the Court, but only as an offset against the calculation of total loss to the victim.

## II. Whether a Reduction of the Mandatory Restitution Order Would Constitute a Modification of the Terms of Probation

■ Even were the Court not initially obligated to impose an order requiring full restitution in this case, it is without authority to reduce its restitution order as a modification of the terms of probation.

Defendant's motion is made pursuant to *18 U.S.C. § 3563(c).* That subsection, entitled "Modifications of conditions," authorizes the Court to:

> [m]odify, reduce, or enlarge the conditions of a sentence of probation at any time prior to the expiration or termination of the term of probation, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, and the

provisions applicable to the initial setting of the conditions of probation.
*Id. See also Id.,* § 3562 (imposition of a sentence of probation).

Proceeding under this statutory authorization, Hamburger necessarily assumes that the restitution order imposed upon him is a condition of his probation, and that the reduction of such restitution would constitute a modification of those conditions. Such an interpretation conflicts with the language of MVRA, in accordance with which the Court imposed the restitution order. That statute provides, in part:

Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), *the court shall order, in addition to ... any other penalty authorized by law,* that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

*18 U.S.C. § 3663A(a)(1)* (emphasis added). Probation is a penalty authorized by law under the sentencing provisions of Chapter 227. *See 18 U.S.C. § 3561.* The mandatory restitution order required by the MVRA is a miscellaneous sentencing provision of Chapter 232 that must be imposed, *in addition to any other penalty,* as part of the defendant's sentence. To characterize a restitution order as a condition of probation ignores its statutory independence.

In light of the conclusion that Hamburger's restitution order is not a condition of his probation, but an independent component of his criminal sentence, the Court must deny his motion arising under *18 § U.S.C. 3563(c).*

## III. The Effect of a Victim Renouncing His Interest in Receiving Restitution

Though the settlement of the claim the victim had against the defendant for the loss he sustained, and the general release given in consequence thereof, do not obviate the requirement for restitution as described above, the question remains where should continued restitution payments be directed?

The procedures for issuance and enforcement of restitution orders are codified in *18 U.S.C. § 3664,* which states that "[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." *Id.* § 3664(f)(1)(A). That section also provides that "[a] victim may at any time assign the victim's interest in restitution payments to the Crime Victims Fund in the Treasury without in any way impairing the obligation of the defendant to make such payments." *Id.* at § 3664(g)(2). The statute is silent, however, as to how a court should enforce a restitution order when a victim renounces his interest.

The Second Circuit addressed this issue in *Johnson, supra,* where victims declined to receive restitution despite the fact that the evidence at trial supported a mandatory restitution order. Judge Casey imposed restitution orders in accordance with § 3663A, and ruled that if the victims renounced their interests in receiving restitution, the restitution would be directed to the Crime Victims Fund.

The Second Circuit affirmed the district court's *sua sponte* reassignment of restitution to the Crime Victims Fund based on an implicit authority the court derived from § 3664:

[Defendant] argues that § 3664(g)(2) provides the statutory authority to assign interest in restitution only to victims, and that the Court therefore had no authority to [reassign the renounced interest to the Crime Victims Fund]. We

disagree. Although § 3664(g)(2) authorizes victims to make such an assignment, it does not preclude the Court from doing so ...

The District Court did not err in directing that, if the victim renounced its interest in Hunter's restitution payments, those funds would be assigned to the Crime Victims Fund.

*Id.* at 244, 245–246 (citations omitted).

A different result was reached by the Seventh Circuit in *U.S. v. Pawlinski*, 374 F.3d 536 (2004). There, an alderman plead guilty to defrauding his political contributors and agreed to make restitution. When the political contributors disclaimed their interest in receiving those payments, the district court *sua sponte* directed that the disclaimed interest in a restitution award be deposited with the Crime Victims Fund. Pawlinski challenged that order. The Seventh Circuit held that such an order was "illegal":

> An order of restitution under [MVRA] ... must go to victims of the defendant's crimes, and the Crime Victims Fund is neither a victim of Pawlinski nor a representative of his victims. There are only two exceptions ...: if the order is imposed pursuant to a plea agreement which provides for restitution to nonvictims, or if the victims assign their right to restitution to the Crime Victims Fund ... Neither exception is applicable to this case. There has been no assignment, and defendant merely agreed [as

part of his plea agreement] to pay restitution as ordered by the court.

*Id.* at 539.

The silence of the statute on where to direct payments when a victim renounces his interest in restitution only reemphasizes the compensatory nature of restitution orders. The most reasonable inference to be drawn as to why the statute is silent on the issue is because it is not anticipated that restitution payments will be made in the absence of a victim who has suffered actual damages for which he would seek compensation. In *Pawlinski*, there was an alternate "victim" to which the Seventh Circuit could direct the restitution award, the political campaign account that was the source of the misappropriated funds.[5] But the logical application of the Seventh Circuit's decision in *Pawlinski*, if all of the victims have renounced their interest in receiving restitution but refused to assign their interest to the Crime Victims Fund, leaves a court collecting restitution payments from the offender but without power to distribute the funds anywhere. *Cf. Johnson*, 378 F.3d at 244–245.

■ As in *Pawlinski*, there are other victims to be compensated in this case. The holding of *Johnson* allows a district court in this Circuit to reassign unclaimed restitution interests to the Crime Victims Fund, but does not require such a result. This Court finds it more prudent to redirect Freeman's restitution interest to the other victims who suffered losses from Hamburger's crime. Hamburger is directed to make $1000 monthly restitution pay-

---

**5.** On the subject of substitution of interests, Section 3664(f)(1)(B) provides that "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." This subsection implies, in accordance with this Circuit's jurisprudence that a victim should not receive double compensation for his losses, that if a victim is compensated by an insurer for his losses, the insurer should be subrogated as the victim. *Cf. U.S. v. Nucci*, 364 F.3d 419 (2d Cir.2004) (applying principles of joint and several liability to bar double recovery of loss through restitution payments).

ments to the Clerk of the Court, to be disbursed to the remaining victims until they are fully compensated, and thereafter $500 per month to the Clerk of the Court for the benefit of the Crime Victims Compensation Fund, until Hamburger fulfills the remainder of his restitution obligation.

## IV. Whether Hamburger Should Be Given Credit to His Restitution Obligation for Stock Transferred to Freeman

Where *18 U.S.C. § 3664* generally defines the procedures for issuing and enforcing an order of restitution, *18 U.S.C. § 3664(f)(3)* specifies the form of payments which may be ordered by the court: "[A] restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." 3664(f)(4) further defines an in-kind payment; it may be in the form of a "(A) return of property; (B) replacement of property; (C) or if the victim agrees, services rendered ...." Hamburger seeks credit for the value of his stock transfer as an offset against his restitution obligation to Freeman.

■ Setting aside that the restitution order imposed upon Hamburger as part of his sentence did not direct him to make a stock transfer, and MVRA does not clearly authorize this Court to modify the form of payments, as opposed to the payment schedule,[6] Hamburger has not established any value to the in-kind stock transfer. By his own admissions, the stocks are not presently tradable on any market, and the self-serving statements of a Senior Vice President to Bio Defense do not establish any reliable value. Should Hamburger wish to obtain credit for any difficult to value in-kind transfers to his victims, he can liquidate those assets and use the proceeds for restitution.

## V. Termination of Probation

*18 U.S.C. § 3564(c)* provides that "The court, after considering the factors set forth in section 3553(a) to the extent that they are applicable, may ... terminate a term of probation previously ordered and discharge the defendant, ... if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice."

Hamburger was sentenced on March 12, 2003 to ten months of home detention as a condition of five years of probation, and ordered to make restitution beginning in April 2003. Since then, Hamburger has not petitioned this Court alleging any financial hardship in making restitution payments. Yet, as of September 2005, Mr. Hamburger has only paid $9,500 of the $15,000 due to victims other than Freeman via the Clerk of the Court, $4,000 of which was paid after inexplicably falling into arrears for ten months, and then in contemplation of petitioning the government for a termination of his restitution obligations and probation. (*See Dickman Decl.* ¶¶ 11–12; *Rosen Decl.*, Ex. E). Without an explanation, this failure to make timely restitution payments, along with his offer of

---

6. *18 U.S.C. § 3664(k)* provides that "A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution ... Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the *payment* schedule, or require immediate payment in full, as the interests of justice require." (emphasis added). With the understanding that a restitution order is imposed as an independent part of the sentence, this subsection authorizes an adjustment only to the payment schedule, not to the form of payment. The form of payment may be considered to be an element of the sentence.

speculative in-kind payments and his attempt to evade making full restitution, suggests a less than conscientious attempt to acknowledge his victims' losses.

■ Having considered the factors articulated in Section 3553,[7] the Court finds no affirmative interest in justice which would be served by terminating his probation early. As a result, Hamburger's application for early termination of his probation is denied, with leave to re-apply in the future.

## CONCLUSION

For the foregoing reason, defendant's motion to modify or terminate his probation is denied. Defendant's application for "in-kind" credit to his restitution obligation for stock transfers is denied. Defendant will continue to make monthly restitution to the Clerk of the Court, for disbursement as provided above.

SO ORDERED.

---

7. The Court has considered the factors of Section 3553, including the nature of Hamburger's offense, the need to afford adequate deterrence to criminal conduct, the need to protect the public from future crimes of Hamburger, the need to provide Hamburger with educational and vocational training, the kind of sentences generally imposed for his offense, the Sentencing Commission guidelines and statements of policy, the need to avoid disparity in sentencing, and the need to provide victims with restitution.