# United States Court of Appeals
## For the First Circuit

---

Nos. 04-2076
     04-2579

UNITED STATES OF AMERICA,

Appellee,

v.

BRUCE ZISKIND; BRUCE TURNER,

Defendants, Appellants

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

---

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

---

James M. Fox for appellant Bruce Ziskind.
Robert L. Sheketoff for appellant Bruce Turner.
John A. Capin, Assistant United States Attorney, and Michael
J. Sullivan, United States Attorney, for appellee.

---

December 22, 2006

---

**LYNCH**, **Circuit Judge**.  Bruce Ziskind and Bruce Turner pled guilty in federal district court to theft from an interstate shipment and conspiracy to steal from an interstate shipment.  The district court sentenced Ziskind to twenty-four months' imprisonment and twelve months of supervised release.  Turner was sentenced to eighteen months' imprisonment and thirty-six months of supervised release.  Both were required to pay restitution.

Ziskind and Turner appeal their sentences.  They argue that because no loss amount was charged in the indictment, United States v. Booker, 543 U.S. 220 (2005), barred the district court from ordering restitution in any amount.  Ziskind further argues that the government lacks standing to enforce the restitution order because the victim waived restitution.  Finally, Turner argues that the district court sentenced him to terms of imprisonment and supervised release above the statutory maxima.

As the government concedes, the district court erred in imposing a thirty-six-month term of supervised release on Turner, and we thus vacate this term of supervised release and remand to the district court to impose a term of supervised release of no more than one year.  Otherwise, we reject the arguments made by Ziskind and Turner and affirm their sentences.

I.

On December 29, 2002, Ziskind and Turner, along with others, participated in the theft of a shipment of Gillette Company

-2-

merchandise consisting primarily of Mach3® razors. A portion of the stolen shipment was recovered. On March 26, 2003, a grand jury in the District of Massachusetts returned an indictment charging Ziskind and Turner with theft from an interstate shipment in violation of 18 U.S.C. §§ 2 and 659 (Count One), and conspiracy to steal from an interstate shipment in violation of 18 U.S.C. § 371 (Count Three).[1] The indictment did not allege a loss amount.

Ziskind and Turner pled guilty to both charges on March 23, 2004. At an evidentiary hearing on July 30, 2004, the district court found the value of the stolen shipment to be $254,000.

The same day, the court sentenced Ziskind to twenty-four months' imprisonment, twelve months of supervised release, and to pay $145,142 in restitution. Twelve months of Ziskind's term of imprisonment was to run concurrently with an undischarged term of imprisonment he was then serving. On November 1, 2004, the court sentenced Turner to eighteen months' imprisonment, thirty-six months of supervised release,[2] and, jointly and severally with

---

[1] The indictment also charged Ziskind and Turner with possession of goods stolen from an interstate shipment in violation of 18 U.S.C. § 659 (Count Two). That count was dismissed as a lesser included offense to Count One.

In addition, the indictment charged Russell Jones with Counts One through Three and Brendan Bottino with Count Two. Both pled guilty. Jones was sentenced to twelve months' probation and ordered to pay $5000 in restitution, and Bottino was sentenced to twelve months' imprisonment. Neither has appealed his sentence.

[2] At the sentencing hearing, the court ordered Turner to serve a five-year term of supervised release. The court did not at

Ziskind, to pay $145,142 in restitution. Turner's term of imprisonment was to run concurrently with a 235-month sentence that he received the same day on an unrelated felon-in-possession charge.

## II.

We review sentencing issues involving questions of law de novo. United States v. McCarthy, 77 F.3d 522, 535 (1st Cir. 1996). Normally, "decisions to impose concurrent or consecutive sentences are committed to the judgment of the sentencing court, and such decisions are reviewed only for an abuse of discretion." Id. at 536. However, unpreserved claims are reviewed for plain error. Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 35-36 (1st Cir. 2006). To prevail on a claim reviewed for plain error, a defendant must demonstrate that:

> "(1) an error was committed; (2) the error was 'plain' (i.e.[,] obvious and clear under current law); (3) the error was prejudicial (i.e.[,] affected substantial rights); and (4) review is needed to prevent a miscarriage of justice," meaning that "the error 'seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'"

Id. at 36 (alterations in original) (quoting Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 10 (1st Cir. 2004) (quoting Smith v.

---

that time specify whether the five-year sentence was attributable to an unrelated felon-in-possession charge, on which Turner was also sentenced that day, the theft charges, or both. However, the judgment in this case specifies a thirty-six-month period of supervised release, and the judgment in the firearms case indicates a sixty-month term of supervised release.

Kmart Corp., 177 F.3d 19, 26 (1st Cir. 1999))); see also United States v. Olano, 507 U.S. 725, 732 (1993).

A.        Restitution

Ziskind and Turner argue that the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. §§ 3663A, 3664, which mandates imposition of restitution orders in their cases, is unconstitutional as applied to them because no loss amount was charged in the indictment or found by a jury beyond a reasonable doubt. They argue that Booker prohibits the post-conviction judicial factfinding underlying their restitution orders.[3]

We bypass the question of whether Ziskind and Turner preserved their Booker arguments and assume for the sake of argument that they did.[4]

The argument that Booker applies to judicial determination of the amount of restitution is without merit. "Booker and its antecedents do not bar judges from finding the

_____

[3]    Ziskind also relies on Blakely v. Washington, 542 U.S. 296, 303 (2004), and Ring v. Arizona, 536 U.S. 584, 602 (2002).

[4]    Ziskind and Turner argue that they preserved the Booker argument because both objected under Blakely to the court's determining the loss amount on which the restitution orders were based. See United States v. Antonakopoulos, 399 F.3d 68, 76 (1st Cir. 2005) ("The argument that a Booker error occurred is preserved if the defendant below argued Apprendi or Blakely error . . . ."). Ziskind's position has additional complications: because his plea agreement provided that the U.S. Attorney would recommend to the sentencing judge a sentence that included "restitution in an amount to be determined at sentencing," the district court believed that any Blakely objection was waived. Ziskind argued to the district court that the objection was not waived.

facts necessary to impose a restitution order. . . . Post-conviction judicial fact-finding to determine [loss] amount 'by no means impos[es] a punishment beyond that authorized by jury-found or admitted facts' or 'beyond the "statutory maximum"' . . . ." United States v. Milkiewicz, --- F.3d ---, No. 06-1192, slip op. at 30-31 (1st Cir. Dec. 6, 2006) (second alteration in original) (quoting United States v. Leahy, 438 F.3d 328, 336-37 (3d Cir. 2006) (en banc)).

Judicial determination of the loss amount underlying the restitution orders was constitutionally permissible.

B.       Government Standing To Enforce Ziskind's Restitution Order

Ziskind argues that Gillette, the victim, waived restitution and did not assign its interest in any restitution to the Crime Victims Fund of the United States Treasury, and that the government therefore has no legally cognizable interest in the restitution award. He argues that the government's standing with respect to restitution was conferred by the MVRA "as a convenience," so that the government could "litigate on behalf of the victims in lieu of their own participation." As a result, he argues, the government does not have standing to litigate or enforce the July 30, 2004 restitution order, and the order must be vacated. Ziskind did not make these arguments to the district court, so we review only for plain error.

There was no error here, much less plain error. First, the record does not establish that the victim, Gillette, in fact waived restitution. Gillette stated in the course of its motion to quash a subpoena seeking a valuation of the stolen merchandise that it was willing to give up any claim of restitution in an effort to avoid involvement in the case. That device did not work. Gillette became involved, and thereafter, Gillette agreed to the ordering of restitution.

More importantly, the prosecution's standing to seek restitution under the MVRA does not depend on a victim's actions. This is because, contrary to Ziskind's assertion, restitution ordered as part of a criminal sentence is a criminal penalty, not a civil remedy.[5] United States v. Savoie, 985 F.2d 612, 619 (1st Cir. 1993); see also Kelly v. Robinson, 479 U.S. 36, 52 (1986) ("Although restitution does resemble a judgment 'for the benefit of' the victim, the context in which it is imposed undermines that conclusion. The victim has no control over . . . the decision to award restitution."); United States v. Rostoff, 164 F.3d 63, 71 (1st Cir. 1999) ("The nature of restitution is penal and not

<hr />

[5] Nor do we necessarily accept Ziskind's assumption that government standing in a civil case, see, e.g., 15 U.S.C. § 78u(5), derives from the victim's standing. See U.S. Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc., 64 F.3d 925, 928 (4th Cir. 1995) (suggesting that in a civil action, the government can have a penal interest in enforcing the repayment of a debt to a third party).

compensatory."). In Savoie, we held that restitution imposed as part of a criminal sentence "is not a civil affair; it is a criminal penalty meant to have deterrent and rehabilitative effects. Private parties cannot simply agree to waive the application of a criminal statute." 985 F.2d at 619 (citation omitted); cf. United States v. Parsons, 141 F.3d 386, 393 (1st Cir. 1998) ("[A] release by the victim does not preclude or cap restitution of losses as part of criminal sentencing in a case where there is no double recovery.").

To the extent Ziskind argues that the MVRA itself does not authorize restitution in this case, that argument fails.

United States v. Reifler, 446 F.3d 65 (2d Cir. 2006), on which Ziskind relies, is inapposite. The court in Reifler vacated orders that awarded restitution to people who did not qualify as victims under the MVRA. Id. at 125-27, 132; cf. United States v. Paradis, 219 F.3d 22, 25 (1st Cir. 2000) (vacating order awarding restitution to bankruptcy trustee, who was not a victim of the offense). There is no question in this case that Gillette was injured by the defendants' conduct and is a victim within the meaning of the MVRA.

Nor is United States v. Pawlinski, 374 F.3d 536 (7th Cir. 2004), on which Ziskind also relies, applicable. In Pawlinski, the court held that unclaimed restitution could not be transferred to

the Crime Victims Fund because the Crime Victims Fund was not a victim or victim representative. Id. at 539-40. This case raises no such issue because Gillette accepted the district court's decision to impose restitution, and the order of restitution states that it will be paid to Gillette.

The restitution order was proper.

C.        Turner's Term of Imprisonment

Turner argues that the district court erred in sentencing him to a total of eighteen months' imprisonment through consecutive sentences. Eighteen months, he argues, is above the authorized statutory maximum. He argues, and the government concedes, that because the government did not allege a loss amount in the indictment, it charged only misdemeanors. See United States v. Scanzello, 832 F.2d 18, 22-23 (3d Cir. 1987). Under 18 U.S.C. § 371, if the object of the conspiracy is a misdemeanor, "the punishment for such conspiracy shall not exceed the maximum punishment for such misdemeanor." Thus, because the maximum term of imprisonment under Count One was one year, the maximum term under Count Three also was one year. Turner argues that the imposition of consecutive sentences on Counts One and Three impermissibly increased the term of imprisonment on Count Three beyond one year.[6] We disagree.

_____

[6] The court did not explicitly state how much of the sentence was attributable to the theft conviction and how much to

As an initial matter, Turner may well be barred from raising such a claim because his counsel urged the district court to impose a twenty-four-month sentence. Cf. United States v. Angiulo, 897 F.2d 1169, 1216 (1st Cir. 1990) ("[W]e do not think that defendants can properly challenge on appeal a proposal they themselves offered to the trial court.").

Even giving Turner the benefit of review, however, there was neither error nor plain error. "By statute, Congress empowered district courts to utilize either concurrent or consecutive sentences." United States v. Quinones, 26 F.3d 213, 216 (1st Cir. 1994); see also 18 U.S.C. § 3584(a) (providing that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time . . . the terms may run concurrently or consecutively"). In determining whether to impose consecutive or concurrent sentences, courts are required to consider specific factors enumerated in 18 U.S.C. § 3553(a). 18 U.S.C. § 3584(b). These factors include "the nature and circumstances of the offense[,] the history and characteristics of the defendant[,] the need for [a consecutive] sentence[,] . . . [and] the kinds of sentences available." Id. § 3553(a). In imposing Turner's sentence the court commented on Turner's "terrible criminal record" and considered the range set

the conspiracy conviction, but it did note that each carried a maximum penalty of one year.

forth in the Sentencing Guidelines. It complied with the sentencing protocol.

Further, Turner was not prejudiced: his eighteen-month sentence runs concurrently with a 235-month sentence. See United States v. Dominquez Benitez, 542 U.S. 74, 81-82 (2004) ("[R]elief for error is tied in some way to prejudicial effect . . . [and requires a] showing of 'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.'" (third alteration in original) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.))).

D.      Turner's Term of Supervised Release

Turner also argues that the district court erred in sentencing him to thirty-six months of supervised release. He argues that because the maximum term of supervised release for Count One was one year, the maximum term under Count Three also was one year, and that his term of supervised release thus was unauthorized.

The government concedes that the thirty-six-month supervised release term was error. 18 U.S.C. § 3583(b) provides that the maximum period of supervised release for a misdemeanor is one year. This maximum applies to both the substantive crime and the conspiracy. 18 U.S.C. § 371. Under 18 U.S.C. § 3624(e), a term of supervised release "runs concurrently with any [other] term . . . [of] supervised release . . . for another offense to which

-11-

the person is subject or becomes subject during the term of supervised release."  See also United States v. Hernandez-Guevara, 162 F.3d 863, 877 (5th Cir. 1998) ("Even when federal law requires consecutive terms of imprisonment, the supervised release term 'is to run concurrently with any other term of supervised release imposed.'"  (quoting U.S. Sentencing Guidelines Manual § 5G1.2 commentary (1997))).

We thus vacate Turner's term of supervised release and remand for the imposition of a new term of supervised release not to exceed one year.  Otherwise, the judgments entered by the district court are affirmed.