UNITED STATES of America, Plaintiff–Appellee,

v.

Ronald M. TURNER, Defendant–Appellant.

No. 01–30439.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 2002.

Filed Dec. 11, 2002.

Michael Filipovic, Assistant Federal Public Defender, and Vicky W.W. Lai, Research and Writing Attorney, Seattle, WA, for the defendant-appellant.

Francis J. Diskin, United States Attorney, Western District of Washington; Mark N. Bartlett, Assistant United States Attorney, Western District of Washington; and Karin B. Hoppmann, Criminal Division—Appellate Section of Department of

Justice, Washington, DC, for the plaintiff-appellee.

Allen R. Bentley, Seattle, WA, for amicus curiae Eric B. Sandall.

Before: HILL,* GOULD and BERZON, Circuit Judges.

HILL, Circuit Judge:

Appellant Ronald Melvin Turner appeals the district court order granting the government's petition to revoke his supervised release. In so doing, the district court vacated its previous order of restitution as void, resentenced Turner to ninety days' home confinement, followed by thirty-three months' supervised release, and fined him $100,000. Based on the following, we reverse the judgment of the district court and reinstate its original order of restitution with special instructions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

For over twenty-five years, Turner owned several successful real estate businesses in Seattle, employing, at one time, more than 400 employees. In late 1993, however, Turner's enterprises experienced severe cash flow problems. In response, Turner began kiting checks between two banks, Key Bank and Seafirst Bank.[1] He had no previous criminal record. For the next six months, he kited over 400 checks, worth $1,391,781.08, back and forth be-tween the two banks in a schematic attempt to disguise his financial problems.

In mid–1994, Turner apparently experienced a change of heart. He instructed his attorney to meet with and inform the two unsuspecting banks of his misdeeds, and institute a restitution program. To start, Turner assigned assets valued at $588,633 to Key Bank and Seafirst Bank, and signed repayment and pledge agreements with both.

Ultimately, however, Turner was financially unable to meet and maintain his repayment pledges. He filed for Chapter 7 bankruptcy protection in 1995. As a result, he was indicted for bank fraud in a one-count indictment, pursuant to 18 U.S.C. § 1344. He pled guilty.[2] The district court sentenced Turner to the United States Sentencing Guidelines' (U.S.S.G.) lower-end punishment range of fifteen months' imprisonment, followed by five years' supervised release. 18 U.S.C. § 3583(a); see U.S.S.G. §§ 2F1.1(b), 3E1.1. In addition, it ordered him to pay restitution to the banks in the amount of $1,391,781.08, with credit for amounts previously paid, at the rate of $400 per month, pursuant to 18 U.S.C. §§ 3663 and 3663A.

Turner served his time in prison and was released in February 1998. He returned to work as a real estate salesman on a commission basis. From July 1998, through November 1999, he dutifully paid $400 per month into the registry of the court in a timely manner. Then, due to an increase in his earnings, the probation officer instructed Turner to raise his monthly

---

* The Honorable James C. Hill, United States Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation.

1. Check kiting is the practice of playing one checking account against another, taking advantage of bank processing delays. It creates the appearance of funds present and immediately available for withdrawal in an account, when none in fact are there. Unless real funds are forthcoming and deposited, the illusion ultimately disappears and the fraud is revealed. *See generally United States v. Poliak*, 823 F.2d 371, 372 (9th Cir.1987).

2. Turner's attorneys fees in the amount of $50,000 were paid by Eric Sandall.

payments by $200, to $600 per month. He complied.

At about the same time, childhood friend and businessman Eric Sandall approached Key Bank and Seafirst Bank in an effort to purchase an assignment of Turner's restitution obligations from them at a discounted value. *See* note 2 *supra.* After negotiations among the three parties were successfully completed, the banks executed a sale and assignment to Sandall of all of their respective criminal and civil restitution claims against Turner, in return for Sandall's payment to them of $50,000.[3] The record suggests that the banks considered this a windfall, as they had written off the debt as a loss.

The day after the deal was struck, Sandall notified the probation officer of the banks' assignment to him of Turner's restitution obligations. He asked that all future restitution payments be sent directly to him, adding that "he would like to receive a minimum of either $600 a month or 20% of Mr. Turner's gross income, whichever [is] greater."

In reliance upon this request, Turner sent Sandall a single check for $600. The probation officer admonished Turner for his action, ordered him not to pay directly to Sandall again, and instructed him to reimburse the court registry $600 for the one payment actually made. She later testified that Turner complied with her directions.

Eighteen months elapsed. During this time, the probation officer refused to recognize and honor the assignment and continued to forward Turner's monthly restitution payments paid into the court registry to the banks. The banks declined to accept the funds and returned them to the court registry. Approximately $19,000 accumulated, awaiting distribution.

Then the government filed a petition to revoke Turner's supervised release, alleging violations of two special conditions imposed by the district court in its original judgment.[4] The first special condition of supervised release reads:

> The defendant shall pay restitution in the amount of $1,391,781.08 (less amounts already received), *as directed by the probation office.* Payments are to be deducted from defendant's inmate recovery payment program while incarcerated, with the remaining balance to be paid in equal monthly installments, commencing 30 days after defendant's release from custody, as directed by defendant's probation officer.

(Emphasis added). The second special condition reads: "The defendant shall be required to obtain Probation Department approval before incurring *new* credit charges or opening *additional* lines of credit." (Emphasis added).

The government claimed in the petition that, when Turner sent Sandall the single check for $600, he violated, by definition, the terms of the first special condition as he failed to pay restitution "as directed by the probation department." The government also claimed that, when Sandall purchased Turner's bank debt and asked Turner to pay him directly, this was the equivalent of Turner's "incurring new credit charges or opening additional lines of credit" without the prior approval of the probation department, thereby violating

---

**3.** Although Turner had knowledge of Sandall's negotiations with the banks, the record indicates that he did not directly participate in them, other than to execute a release and submit certain financial information.

**4.** Although four violations were originally alleged in the petition, at hearing, two of the four were dismissed by the district court as not supported by the evidence.

the second special condition of Turner's supervised release.[5]

An evidentiary hearing was held in September 2001. The district court heard testimony from Sandall,[6] the probation officer, and executives of the two banks.[7] It found that Turner had violated both of the special conditions of his supervised release, by sending the single $600 check to Sandall, and by incurring a new obligation without the consent of the probation department.

At the disposition hearing, counsel for the government conceded that the victim banks had the statutory authority, under 18 U.S.C. § 3663(b)(5), to assign their rights to restitution. He also conceded that there was no evidence in the record to indicate that Turner had colluded with Sandall in order to obtain the assignment.[8] Neither was there any evidence in the record to indicate that the banks were further victimized by the assignment.

Nevertheless, the district court found that, although Turner wasn't present at the bank negotiations, he failed to stop Sandall and that Sandall acted at Turner's encouragement. The court stated:

> I find—and I did find previously— that the defendant intentionally failed to advise Probation of the proposed transaction with the banks, and the Court concludes that what transpired was a fraud on the court and on the victim banks; that the negotiation arrangement with the banks was a mere sham and a fraud in order to reduce restitution required by the Court from that previously ordered to a fixed amount which then could be adjusted, depending on the friendship and the financial wherewithal of this defendant.[9] (footnote added).

The district court entered an order revoking Turner's supervised release and vacating its previous restitution order as void. It resentenced him to ninety days' home confinement followed by thirty-three months' supervised release. In addition, it ordered that Turner pay a fine of $100,000 to the court, prior to any payments made to Sandall under "this fraudulent transfer."[10]

Turner appeals.

---

**5.** While the petition claimed that Turner and Sandall had signed a written agreement between themselves for payment of restitution, we find no evidence in the record to support that contention.

**6.** Sandall testified that it was his idea to contact the banks. His motivation was apparently that he wanted to recoup his $50,000 expended for Turner's attorneys fees, as the bank restitution obligations had priority over his unsecured loan.

**7.** The bank officers testified that, while they were aware Turner was under the supervision of the probation office, they viewed the assignment to Sandall strictly as a separate and distinct business transaction.

**8.** Counsel for the government stated at closing that, while the initial concern was that Turner had gone behind the courts back to reduce his restitution debt, "that isn't what we have here."

**9.** To the contrary, the district court earlier found that the "defendant gave assurances to Sandahl [sic] ... that the entire obligation under the restitution order originally would be paid ...," and that the defendant and Mr. Sandahl [sic] acted with knowledge and at least understanding and hope that there was a realistic likelihood that the defendant would be able to pay substantially more than $50,000 back to Mr. Sandahl[sic].

**10.** In imposing the $100,000 fine, the court stated:

> [The] defendant has totally demonstrated his disrespect for the law and the Courts order [after] inform[ing] the banks that he would do everything possible to pay the restitution in full. He got a downward departure, and then he turned around and did

## II. ISSUES PRESENTED

There are two issues for discussion: (1) did the district court abuse its discretion in revoking Turner's supervised release; and (2) under a *de novo* review, did the district court err as a matter of law when it vacated Turner's previous restitution order and replaced it with a $100,000 fine?

## III. STANDARD OF REVIEW

■ We review the decision by the district court to revoke supervised release for abuse of discretion. *See, e.g., United States v. Musa,* 220 F.3d 1096, 1100 (9th Cir.), *cert. denied,* 531 U.S. 999, 121 S.Ct. 498, 148 L.Ed.2d 469 (2000). As the decision by the district court to revoke Turner's supervised release, vacate its restitution order as void, and fine Turner $100,000, involves a question of statutory interpretation, our review is *de novo. See United States v. Cade,* 236 F.3d 463, 465 (9th Cir.2000), *cert. denied,* 533 U.S. 937, 121 S.Ct. 2568, 150 L.Ed.2d 732 (2001).

## IV. DISCUSSION

### A. *Revocation of Supervised Release*

■ Turner argues that, in finding that he violated two special conditions of his supervised release, the district court clearly erred as such findings are not supported in the record by a preponderance of the evidence. 18 U.S.C. § 3583(e)(3);[11] *see United States v. Lockard,* 910 F.2d 542, 543 (9th Cir.1990); *United States v. Lomayaoma,* 86 F.3d 142, 146 (9th Cir.1996). The government has the burden of proof. *See United States v. Soto–Olivas,* 44 F.3d 788, 792 (9th Cir.1995).

■ The first violation claimed is the single $600 check that Turner gave Sandall. The district court found that, "in failing to pay restitution as directed by probation in monthly installments in January of the year 2000, a $600 payment was sent to Mr. Sandall, not to the banks and that was a violation." [12] It also stated that "I understand and I find that Mr. Turner later made that payment to the registry of the court as directed by this court, but that does not alleviate the violation which I find occurred."

Turner claims this is an abuse of discretion by the district court. He argues that he never failed to make a timely payment to the court registry "as directed by the probation officer" and that, in fact, the probation officer testified that the replacement check was timely and no break in payment occurred. We find that the most the record shows is that Turner made a voluntary, perhaps erroneous, payment to Sandall, in addition to his regular monthly court payment. The finding by the district court that this single check was a violation of the first special condition of Turner's supervised release is simply not supported by the record by a preponderance of the evidence and is an abuse of discretion. *See* 18 U.S.C. § 3583(e)(3).

■ The second violation claimed is that Turner incurred new credit when Sandall purchased an assignment of the banks' restitution claims at a discount. The district court found that "[t]he agreement that Mr. Turner reached with Mr. Sandall to pay 20 percent of his gross income or $600, whichever was greater, was in fact a new obligation incurred by Mr. Turner.

everything possible to reduce [his] restitution down to something that he could work out with his friend.

**11.** This statutory section is set forth in its entirety *infra* at note 16.

**12.** The restitution order actually required payment through the court registry as directed by the probation office, not directly to the banks.

That was an obligation that was agreed to prior to and without approval of probation and in violation of [the second] special condition . . . ."[13]

This is not a new debt for Turner. The sale and assignment agreements executed by the banks merely transfer the benefit of Turner's pre-existing restitution obligations to Sandall. They have no effect on the amount finally owed. The only thing that has changed is the ultimate payee of the original debt. All parties agree that the new payee, Sandall, must receive his payments indirectly through the court registry, and not directly from Turner.

The record, by a preponderance of the evidence, simply does not support the finding by the district court that Turner incurred a new debt. To find otherwise was an abuse of discretion.[14] *See* 18 U.S.C. § 3583(e)(3).

**B. Rescission of Original Restitution Order as Void**

◾ Both parties agree that the district court erred by *sua sponte* rescinding its earlier restitution order as void.[15] A court may reduce restitution if it finds that a defendant's economic circumstances have changed. 18 U.S.C. § 3664(k). It may increase restitution on petition by the victim. 18 U.S.C. § 3664(d)(5). It may also resentence a defendant upon a finding that the defendant has defaulted upon his restitution obligation. 18 U.S.C. §§ 3613A, 3614. None of these are present here.

◾ Both parties also agree that the district court lacked authority to impose a $100,000 fine upon Turner. Without a finding that Turner had defaulted upon his restitution obligation, the district court was limited to the four modifications set forth in 18 U.S.C. § 3583(e), each of which are inapplicable here.[16] *See United States*

---

**13.** The probation office had already increased Turner's monthly payments to $600. The fact that Sandall would like to receive the greater of 20% or $600 does not transform suddenly the existing debt into a new debt.

**14.** In addition, there is no evidence in the record to suggest that Turner and Sandall conspired to reduce the original restitution amount owed. In the final analysis, the record supports the distinct possibility that Sandall may receive substantially more than the $100,000 he has at stake.

**15.** Both the government and counsel for Turner objected to the rescission at the disposition hearing.

**16.** The statute reads:
(e) Modification of conditions or revocation.—The court may
. . .
(1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is

warranted by the conduct of the defendant released and the interest of justice;
(2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of postrelease supervision;
(3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve more than 5 years in prison if the offense that resulted in the

*v. Behnezhad,* 907 F.2d 896 (9th Cir.1990), *abrogated on other grounds by Johnson v. United States,* 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000) (a district court has no authority to impose a fine upon revocation for supervised release under Section 3583). Based upon the foregoing, under a *de novo* review, the district court erred as a matter of law when it vacated its previous order of restitution as void and imposed a $100,000 fine upon Turner. *See* 18 U.S.C. § 3583(e).

### C. To Summarize

The government urges that this court affirm the order revoking supervised release and remand for resentencing. It appears that the government, and, perhaps, the district judge, fear that when Sandall has received as much repayment as he desires, he will not insist on further payments by his friend and the deterrence intended in the original restitution order will, in the future, somehow be avoided. Turner is subject to the full amount of restitution. It is to be paid into the court registry and supervised by the probation office. That office should, pursuant to 18 U.S.C. § 3663(b)(5), recognize and honor as valid the assignment of restitution by the banks to Sandall. The banks' sale of their restitution asset is the banks' business. What Sandall elects to do with the stream of payments he has purchased is

for him to say. What may or may not happen in the future was not before the district court. It ought not be before us.

### V. CONCLUSION

Based upon the foregoing, we conclude that the district court abused its discretion in revoking Turner's supervised release as void and resentencing him. It also erred as a matter of law in imposing a $100,000 fine.

We therefore reverse the revocation of Turner's supervised release and the $100,000 fine imposed by the district court, with special instructions to reinstate the district court's previous order of restitution, including therein Turner's original term of supervised release.[17]

**REVERSED.**

**ORIGINAL ORDER REINSTATED** with **SPECIAL INSTRUCTIONS.**

---

term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case; or

    (4) order the defendant to remain at his place of residence during nonworking hours and, if the court so directs, to have

compliance monitored by telephone or electronic signaling devices, except than an order under this paragraph may be imposed only as an alternative to incarceration.
18 U.S.C. § 3583(e)(1)-(4).

**17.** We realize that Turner has already served his ninety-day period of monitored house arrest.