# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2437

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Bonnie Steele Boal, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: February 12, 2008
Filed: July 25, 2008

_____

Before LOKEN, Chief Judge, RILEY and SMITH, Circuit Judges.

_____

LOKEN, Chief Judge.

The issue on appeal is whether a sentencing judge may order the clerk of court to pay money received to satisfy the government's restitution lien to anyone other than the restitution victim identified in the judgment of conviction. We conclude that the judge has no such power because the applicable statutes and regulations impose a ministerial duty on the clerk to pay the restitution victim. Accordingly, we reverse a district court order, premised on the court's view of the equities in this unusual situation, that sought to place the parties in their *status quo ante* by ordering the clerk to return the restitution payment and by restoring or reinstating the government's lien.

# I. Background

Bonnie Boal stole money from a family friend, Dr. Stephen J. Turnbull, while he was teaching in Japan. In December 2002, Boal pleaded guilty to mail fraud. The judgment of conviction included an order to pay Turnbull $148,657.60 in restitution, directing that payments be made to the Clerk's Office of the U.S. District Court for the Southern District of Iowa. The United States Attorney's Office placed a lien on her residence for the amount due.[1] Boal paid the $80,100 that was due immediately and served her five-month prison sentence. While on supervised release, she then made sporadic monthly payments toward the balance due. She was never notified of a delinquency or default. See 18 U.S.C. § 3612(d), (e).

In September 2004, when Boal began divorce proceedings, the issue arose whether she could settle her restitution debt. Turnbull's attorney advised that if Boal would pay Turnbull half the remaining restitution balance, $29,828.80, Turnbull would waive his right to the other half. Boal's attorney contacted her probation officer, who explored this idea with the sentencing judge and the prosecutor. When neither objected, Boal's attorney prepared a "Satisfaction of Restitution and Release of Claims Agreement" (the "Release Agreement"), which Boal signed on July 2, 2005. A few days later, the prosecutor advised Boal's attorney to contact Gary Hayward, an Assistant United States Attorney in the Financial Litigation Unit responsible for

---

[1] Under the Mandatory Victims Restitution Act (MVRA), a restitution order "may be enforced by the United States in the manner provided for in" 18 U.S.C. §§ 3571-74 and 3611-3615. 18 U.S.C. § 3664(m)(1)(A). Thus, the order "is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c). The Attorney General has delegated his authority to collect restitution to the local U.S. Attorneys. See 28 C.F.R. § 0.171. Section 3-12.340 of the United States Attorneys' Manual (Nov. 2000) provides that a notice of lien *must* be filed "[i]n every restitution case where the victim is other than a federal agency."

restitution claims. Boal's attorney left a phone message for Hayward but received no response. An agent signed the agreement for Turnbull on July 27, Boal deposited $29,828.80 with the Clerk's Office, and the Clerk transferred those funds to Turnbull. A copy of the Release Agreement was then belatedly sent to Hayward. On August 1, he wrote both parties advising that the agreement was invalid because a restitution victim has no authority to excuse a defendant's obligation to pay full restitution. Boal completed her term of supervised release in September 2006, making no further restitution payments. The government did not release its lien on her residence.

In early 2007, Boal refinanced her home. To satisfy the government's lien, the finance company deducted the restitution balance due, $29,828.80, from Boal's share of the proceeds and sent a check for that amount to the United States Attorney's Office. That Office deposited the funds with the Clerk's Office, which issued a Receipt for Payment reciting that $29,828.80 was deposited in Account 6855XX, where payments of restitution principal owed to a non-federal victim are held for subsequent payment to the victim. The U.S. Attorney's Office filed a satisfaction of judgment, advised Boal that her restitution obligation "has been paid in full," and sent her a Release of Lien to be filed with the Recorder of Polk County, Iowa.

In response to an inquiry from Boal's attorney one month later, Turnbull filed a pleading in the criminal case captioned Request To Release Funds. It asked "that the funds being held by the Clerk be distributed to him." Boal responded by filing a petition for an extraordinary writ "*Audita Querela,*"[2] asking the district court to direct the Clerk to disburse the funds to Boal and to amend the judgment "to reflect an equivalent reduction in the amount of restitution owed." Her accompanying brief argued that Turnbull had voluntarily surrendered his right to the funds and further asserted that Boal's deteriorating financial situation authorized the court to adjust her

---

[2]A writ of *audita querela* is a common law writ "available to a judgment debtor who seeks a rehearing of a matter on grounds of newly discovered evidence or newly existing legal defenses." BLACK'S LAW DICTIONARY 141 (8th ed. 2004).

restitution payments under 18 U.S.C. § 3664(k). In response, the government filed a motion in the criminal case asking the court to direct the Clerk to distribute the funds to Turnbull, and a motion to dismiss Boal's extraordinary writ petition for failure to state a claim.

After hearing arguments of counsel, the district court dismissed Boal's writ petition, concluding that the issues were more appropriately addressed in the criminal case. No party objects to that ruling. The court then issued an order resolving the pending motions in the criminal case. First, the court agreed with the government that (i) the MVRA obligated the court in sentencing Boal to order her to pay full restitution to victim Turnbull, see 18 U.S.C. § 3664(f)(1)(A); (ii) Boal's restitution obligation is to the government and cannot be waived or excused by Turnbull; and (iii) "allowing defendants and victims to negotiate settlements of restitution violates public policy." Again, no party objects to these rulings, which are clearly correct. See United States v. Ridgeway, 489 F.3d 732, 737-38 (5th Cir. 2007), and United States v. Bearden, 274 F.3d 1031, 1041 (6th Cir. 2001), both citing Kelly v. Robinson, 479 U.S. 36, 52 (1986).

The district court further concluded, however, that "turning the funds over to Dr. Turnbull or the government would also be unjust."[3] To remedy this unusual situation, the court directed the Clerk to "release the funds to Boal's mortgage

---

[3]At the motion hearing, the court was understandably angry at the U.S. Attorney's Office for having advised both the court and Boal's attorney it had no objection to the Release Agreement and then, after Boal acted in reliance on that Agreement, arguing it is unenforceable. "You allowed this lady to make a terrible, damaging commitment with regard to her financial future, thinking that would resolve the matter . . . . [T]he equities are so horribly against the Government in this case that it's hard for me to believe that you make the argument you're making." The prosecutor violated Department of Justice directives when she voiced no objection to the Release Agreement instead of turning the matter over to Hayward, who was the responsible official under 28 C.F.R. § 0.171(b).

company to be put back toward the equity in her home," authorized the government to "reinstate the lien on Boal's home," and directed Boal and the government to "work out a new payment plan to pay Boal's restitution obligation." The government appeals, arguing the court erred in equitably resolving how the funds should be distributed. The district court stayed its order pending appeal, so the funds remain with the Clerk's Office. We are advised that the mortgage on Boal's home has been foreclosed, but this does not moot the issue of whether the district court had authority to order the restitution payment to be disbursed to anyone but victim Turnbull.

## II. Discussion

The district court cited no authority supporting the relief it granted. On appeal, Boal argues that she has suffered a "material change in . . . economic circumstances," and therefore the court's remedy was a valid exercise of its authority to "adjust the [restitution] payment schedule, or require immediate payment in full, as the interests of justice require," 18 U.S.C. § 3664(k), an action that we review for abuse of discretion. See United States v. Vanhorn, 399 F.3d 884, 886 (8th Cir. 2005). However, the schedule to which § 3664(k) refers is the schedule of *future* payments initially established by the court pursuant to § 3664(f)(2) and 18 U.S.C. § 3572(d). Here, the issue is whether the district court may direct the disbursement of a proper restitution payment *after* it has been deposited with the Clerk's Office. Section 3664(k) does not address that question and therefore does not apply.

The district court's memorandum accompanying its Order seemed to invoke the inherent power of a court to direct the distribution of funds deposited into court as the equities may require. In many if not most situations, that judicial power no doubt exists, but not if a governing statute or regulation mandates a contrary distribution. It is to that question -- not adequately addressed by either party -- that we must turn. The government treats the issue as turning on the statutory priority of its restitution lien which triggered the payment in this case. But the question we address is broader

-- it would arise even if Boal had voluntarily made a proper restitution payment to the Clerk's Office, then suffered a change of fortune and filed a motion asking the district court to order that the payment be returned.

The assessment, collection, and distribution of criminal monetary penalties, including restitution, require effective cooperation between the executive branch and the judiciary. Congress has modified from time to time the manner in which that cooperation is effected. The present statute provides that a person sentenced to pay restitution shall pay "as specified by the Director of the Administrative Office of the United States Courts," who "may specify that such payment be made to the clerk of the court." 18 U.S.C. § 3611. If the clerk is the specified recipient, it "shall notify the Attorney General of each receipt of a payment." § 3612(a). All payments received from a defendant "shall be disbursed" so that the defendant's obligations are paid in full in a mandated sequence: penalty assessments, the "restitution of all victims," and then all other payments required under the sentence. § 3612(c).

Acting under 18 U.S.C. § 3611 and 28 U.S.C. § 604(a)(18), the Director of the Administrative Office has adopted "Criminal Debt" policies and procedures that are published in the Guide to Judiciary Policies and Procedures, Vol. 1, Ch. VII, Part H. Section 1.2.3 of Part H provides:

> A person who is sentenced to pay . . . restitution . . . shall pay it . . . as specified by the [sentencing] court under the authority of the Director . . . . Frequently [as in this case], it is specified that such payment be made to the "Clerk, U.S. Courts" (see 18 U.S.C. § 3611). In other words, the Department of Justice enforced the judgment, but the judiciary receipts payments, disburses restitution to victims, and tracks the debt.

The Criminal Debt provisions then describe in detail how restitution payments are to be disbursed by a clerk of court. Consistent with 18 U.S.C. § 3612(c), § 2.3.5 provides that "any money received from a defendant *shall* be applied so that each of

-6-

the following obligations is paid in full in the following sequence . . . 2. Nonfederal restitution principal, credited to Fund 6855XX for subsequent payment to victims" (emphasis added). Section 2.4.1 then provides:

> The courts receive all receipts for criminal debts, but only restitution payments are disbursed directly to victims. . . . Restitution disbursements should be made as frequently as possible to the beneficiaries. Each district should establish a policy for a minimum dollar threshold for disbursement.

These statutes and the Director's policies and procedures make it clear that the Clerk's Office in this case has a non-discretionary duty to deposit the $29,828.80 restitution payment into Account 6855XX and then to disburse those funds to the restitution victim identified in the judgment of conviction. We do not fault the Clerk for delaying disbursement while an issue regarding whether the victim was entitled to the funds was resolved by the court. But when the district court properly determined that the Release Agreement was unenforceable and therefore the victim was entitled to the funds, the court had no authority to countermand the Clerk's duty to disburse the funds to the restitution victim in accordance with the mandates of 18 U.S.C. § 3612(c) and the Director's policies and procedures.[4] Of course, once the funds are so disbursed, the federal interest in enforcing the MVRA and the judgment of conviction will end. Boal may then have a claim against Turnbull based on the unenforceable Release Agreement, but that is an issue that must be raised and resolved in state court.

For the foregoing reasons, the district court's Order of May 24, 2007, is reversed. The Clerk's Office is directed to enter a Satisfaction of Judgment and to

---

[4]The MVRA also provides that a restitution victim "may at any time assign the victim's interest in restitution payments to the Crime Victims Fund in the Treasury without in any way impairing the obligation of the defendant to make such payments." 18 U.S.C. § 3664(g)(2).

disburse $29,828.80 from account 6855XX to Stephen Turnbull in accordance with that Office's normal disbursement practices and procedures. Defendant Boal's restitution obligation is fully satisfied. Her motion to remand is denied.

_____