**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. ANNE MARIE HANKINS, as Primary Shareholder, President and Operations Officer of Emerald Powerline Construction, Inc, *Defendant-Appellant*. | No. 15-30345 D.C. No. 6:01-cr-60100-AA-1 OPINION |

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted November 10, 2016
Portland, Oregon

Filed June 6, 2017

Before: M. Margaret McKeown and William A. Fletcher,
Circuit Judges, and Jennifer A. Dorsey,[*] District Judge.

Opinion by Judge McKeown

---

[*] The Honorable Jennifer A. Dorsey, United States District Judge for the District of Nevada, sitting by designation.

## SUMMARY**

### Criminal Law

The panel affirmed the district court's denial of Anne Marie Hankins's motion seeking full satisfaction of the restitution judgment entered following her conviction for bank fraud and submitting a false loan application.

The panel held that a defendant may not discharge a restitution judgment based on a private settlement between the victim and the defendant; and that the Mandatory Victims Restitution Act of 1996 permits a district court to redirect restitution payments to the Crime Victims Fund, when a victim later disclaims restitution without making a direct assignment to the Fund.

### COUNSEL

John C. Fisher (argued), Eugene, Oregon, for Defendant-Appellant.

Amy Potter (argued), Assistant United States Attorney; Kelly A. Zusman, Appellate Chief; Billy J. Williams, United States Attorney; United States Attorney's Office, Eugene, Oregon, for Plaintiff-Appellee.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

McKEOWN, Circuit Judge:

In this appeal we resolve two related questions of first impression in our circuit that arise out of the Mandatory Victims Restitution Act of 1996 ("MVRA"), a statute that requires certain criminal defendants to pay restitution to compensate and assist victims. We first determine whether a defendant may discharge a restitution judgment based on a private settlement between the victim and the defendant. The answer is no—restitution is a criminal sentence that cannot be extinguished by a victim's disclaimer of benefits. Relatedly, we decide whether a district court may redirect restitution payments to the federal Crime Victims Fund, 42 U.S.C. § 10601 *et seq.*, ("the Fund"), when a victim later disclaims restitution without making a direct assignment to the Fund. The answer is yes—the statute provides leeway for the court to fashion this practical solution.

**Background**

The factual background here is not complicated. In 2001, Anne Hankins pled guilty to bank fraud under 18 U.S.C. § 1344 after submitting a false loan application for $350,000 to U.S. Bank Special Assets Group ("U.S. Bank"). The district court sentenced Hankins to thirty days in jail and entered a judgment under the MVRA ordering her to pay U.S. Bank $350,000 in restitution. The restitution, payable "in full immediately" or, if any unpaid balance remained at the time of Hankins's release from custody, "at the maximum installment possible, and not less than $50 per month," was to be deposited with the clerk of the court "for transfer to the payee."

In 2002, U.S. Bank assigned its interest in the restitution judgment to Horton & Associates LLC ("Horton"). In 2011, the district court entered an order substituting Horton as the assigned victim. Although neither the record nor the district court docket explains the time lag between the assignment and the substitution order, the delay is immaterial for our purposes.

From 2002 to 2013, Hankins made sporadic payments: she paid most months, and the payments ranged from $50 to $400. On several occasions between 2011 and 2013, the Treasury Offset Program also garnished funds, taking from Hankins as much as $3,310.22 at a time.[1] By July 2013, Hankins had paid $13,044.30 towards her $350,000 judgment—leaving her with a remaining balance of $336,955.70.

In September 2013, Hankins and Horton purported to settle the outstanding restitution obligation for a mere $5,000. Soon after, Horton filed with the court a notice entitled "Full Satisfaction of Judgment."[2] The record reflects that neither the district court, Hankins, nor the

---

[1] The Bureau of Fiscal Service administers the Treasury Offset Program and reroutes payments, such as federal tax refunds, to collect delinquent debts owed to federal agencies and states. *Treasury Offset Program (TOP)*, Bureau of the Fiscal Serv.: U.S. Dep't of the Treasury, https://fiscal.treasury.gov/fsservices/gov/debtColl/dms/top/debt_top.htm (last visited Apr. 17, 2017).

[2] Horton is an inactive limited liability company according to the public record maintained by the Oklahoma Secretary of State. *Entity Summary Information*, Oklahoma Secretary of State, https://www.sos.ok.gov/corp/corpInformation.aspx?id=3500644719 (last visited Apr. 17, 2017).

government took any action in court in response to Horton's notice, although Hankins stopped making payments.

In April 2015, more than a year and a half after Horton filed its notice, the Treasury Offset Program garnished $21,765 from Hankins to be applied towards her restitution balance. Hankins, likely displeased by this turn of affairs, filed a motion a few weeks later seeking full satisfaction of the restitution judgment. By that time, Hankins had paid only $34,809.30, including the $21,765 garnishment, of the $350,000 judgment.

The district court denied Hankins's motion, reasoning that the MVRA dictates full mandatory restitution to the victim or the victim's assignee. Based on Horton's notice of "satisfaction in full of the Restitution Judgment," the district court assumed that Horton no longer wished to receive restitution payments and ordered that the money garnished by the Treasury Offset Program and all of Hankins's future restitution payments be deposited into the Fund.[3] We review de novo the legal basis for the district court's ruling on restitution. *United States v. Luis*, 765 F.3d 1061, 1065 (9th Cir. 2014).

## Analysis

### I.  THE MVRA FRAMEWORK

We begin with the statutory framework. The MVRA, 18 U.S.C. §§ 3663A–3664, mandates restitution to victims of certain offenses, including those "committed by fraud or deceit." *Id.* § 3663A(c)(1)(A)(ii). Specifically, a district

---

[3] The Fund is separate from the General Fund of the U.S. Government, 42 U.S.C. § 10601(a), and administered by the U.S. Department of Justice, *id.* § 10605.

court, when sentencing a defendant convicted of a qualifying offense, "*shall order* . . . that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate." *Id.* § 3663A(a)(1) (emphasis added). This restitution order is part of a convicted defendant's criminal sentence. The statute permits district courts to order "restitution to persons other than the victim of the offense" when "agreed to by the parties in a plea agreement." *Id.* § 3663A(a)(3).

The restitution order is issued and enforced in accordance with § 3664. *Id.* § 3663A(d). Relevant here, "[a] victim may at any time assign the victim's interest in restitution payments to the [Fund] without in any way impairing the obligation of the defendant to make such payments," *id.* § 3664(g)(2), and "[n]o victim shall be required to participate in any phase of a restitution order," *id.* § 3664(g)(1). When ordering restitution, the court must assign to each victim "the full amount of each victim's losses" without regard to the defendant's economic situation. *Id.* § 3664(f)(1)(A). And, finally, an order imposing restitution under the MVRA is a final judgment, *id.* § 3664(o), although there are some circumstances under which a district court may alter a final restitution order, *see, e.g.*, *id.* § 3664(j)(2), (o)(1)–(2).

## II. INVALIDITY OF PRIVATE SETTLEMENT OF RESTITUTION ORDERS UNDER THE MVRA

The first question we consider is the effect of Hankins's settlement with Horton on the district court's restitution order. In Hankins's view, once Horton agreed to a "Full Satisfaction of Judgment" in exchange for payment of $5,000, she was off the hook in terms of restitution payments. The government disagrees and claims that

Hankins's restitution order cannot be modified through private settlement.  The government is correct.

Starting with the basics, "[a] sentence that imposes an order of restitution is a final judgment," even though it can be corrected or amended in certain limited circumstances. *Id.* § 3664(j)(2), (o)(1)–(2).[4]  Once a restitution order is imposed, the MVRA leaves the district court with limited options to modify restitution.  *See United States v. Turner*, 312 F.3d 1137, 1143 (9th Cir. 2002).  Ultimately, only the court—rather than the victim or the defendant—can impose or modify the defendant's sentence.  Neither the victim, nor the victim's assignee, has the authority to settle, release, satisfy, or otherwise modify a restitution judgment.  This conclusion follows from the principle that "private

---

[4] For example, under § 3664(o)(1), a restitution order may be:

    (1)  corrected, if there was clear error in the sentence or the defendant provides substantial assistance to the government;

    (2)  modified, if the sentence is appealed under 18 U.S.C. § 3742;

    (3)  amended, if the victim discovers further losses after sentencing; and

    (4)  adjusted, if there is a material change in the defendant's economic circumstances or if the defendant defaults on a restitution obligation.

Under § 3664(j)(2), a court may reduce the amount of restitution to account for compensatory damages later recovered in a civil proceeding. Finally, under § 3664(o)(2), a court may amend a restitution order upon resentencing if the defendant's probation is revoked or if the defendant failed to pay restitution.  None of these designated situations is applicable here.

individuals should not be allowed to thwart the penal goals of the criminal justice system by entering into releases or settlements with wrongdoers." *United States v. Bearden*, 274 F.3d 1031, 1041 (6th Cir. 2001).

Because restitution is a criminal sentence, its enforcement is distinct from a civil judgment that is left largely in the parties' hands. "Private parties cannot simply agree to waive the application of a criminal statute." *United States v. Savoie*, 985 F.2d 612, 619 (9th Cir. 1993).

We have previously held that restitution is not foreclosed even where a defendant and victim entered into a civil settlement *before* the defendant was sentenced under the MVRA. *United States v. Edwards*, 595 F.3d 1004, 1014 (9th Cir. 2010). There, we noted that "[c]riminal restitution is mandatory under the MVRA and cannot be waived by a prior civil settlement." *Id.* Our holding here is a logical extension of the reasoning in *Edwards*: a victim cannot unilaterally extinguish a defendant's obligation to pay restitution by privately settling that restitution order. *See id.* This reasoning is all the more powerful here because, unlike in *Edwards*, Hankins seeks to settle the restitution order itself—a criminal sentence entered following a criminal conviction.

Our conclusion accords with other circuits. The Eighth Circuit has observed that it is "clearly correct" that a victim and a defendant cannot settle a restitution obligation because allowing otherwise would "violate[] public policy." *United States v. Boal*, 534 F.3d 965, 967–68 (8th Cir. 2008). This principle is echoed by the Fifth Circuit: "[The victim] could not waive the Government's authority to collect restitution, as that bears uniquely on the State's right to administer punishment." *United States v. Ridgeway*, 489 F.3d 732, 738 (5th Cir. 2007) (discussing the MVRA's predecessor statute,

the Victim and Witness Protection Act of 1982 ("VWPA")). And the Second and Sixth Circuits agree that a district court cannot reduce or eliminate restitution as a result of a victim's waiver or prior settlement. *See United States v. Johnson*, 378 F.3d 230, 244–45 (2d Cir. 2004); *Bearden*, 274 F.3d at 1041. Stated differently, "the law will not tolerate privately negotiated end runs around the criminal justice system." *Savoie*, 985 F.2d at 619 (discussing the VWPA).

Importantly, if we adopt the rule that Hankins suggests, there is a serious risk that defendants could coerce victims into settling or that defendants and victims would collude on settlements. Although this risk is less likely in Hankins's case, as the victim was a bank, we are not convinced that other victims, such as victims of sexual assault, *see United States v. Palmer*, 643 F.3d 1060, 1068 (8th Cir. 2011) (affirming an award of restitution under the MVRA to a victim of commercial sex trafficking), would stand in such a detached bargaining position. In that situation, the power imbalance between the actors may permit the defendant to coerce the victim to accept a nominal settlement. Taking restitution out of the hands of the criminal justice system and leaving it to private parties is not a result contemplated or countenanced by the MVRA.

Finally, the rule of lenity does not help Hankins. Considering the text, structure, history, and purpose of the statute, there is no "grievous ambiguity" that justifies invoking the rule here. *See Muscarello v. United States*, 524 U.S. 125, 138–39 (1998).

## III. DISTRICT COURT'S AUTHORITY TO REDIRECT RESTITUTION PAYMENTS TO THE CRIME VICTIMS FUND

Once the district court determined that the attempted settlement between Hankins and Horton did not modify the restitution order and that Horton, as the victim's assignee, had disclaimed further restitution through its filing of a notice of satisfaction, the district court directed payment of the restitution to the Fund. Hankins argues that this relief went beyond her request to satisfy the judgment and that the district court's decision "destroy[s] the contractual arrangement between Hankins and Horton." Hankins's argument is misguided, because any claimed contract does not affect her liability for restitution. So, faced with a situation in which payment of mandatory restitution is continuing and the victim has declared its debt satisfied, the district court dealt with a dilemma—where does the money go? In *Turner*, a case that involved the validity of an assignment by a victim, we validated the assignment but noted, "What may or may not happen in the future [with the restitution payments] was not before the district court. It ought not be before us." 312 F.3d at 1144. That question is now before us.

Put simply, the district court ordered what makes practical sense within the spirit and confines of the MVRA: it did not modify the sentence itself but redirected payments to the Fund. We conclude that the district court had the flexibility under the MVRA to effect this solution. Three principles derived from the statute support this interpretation: the mandatory nature of restitution, the fact that the payment obligation is not contingent on the victim, and the purpose of restitution.

The MVRA is clear that the award of full restitution is mandatory.  Although the victim is the beneficiary of restitution, the victim has only limited rights and may not dictate whether restitution is appropriate or the amount: "the court shall order restitution to each victim in the full amount of each victim's losses."  18 U.S.C. § 3664(f)(1)(A).

The restitution obligation is a continuous one that does not ebb and flow with the victim's circumstances.  The obligation is terminated only by "the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution" and not by any action on the part of the victim.  *Id.* § 3613(b). Even when the defendant dies, her "estate will be held responsible for any unpaid balance of the restitution amount."  *Id.*  And, when calculating restitution, the district court may not consider that the victim is entitled to compensation from insurance or another source.  *Id.* § 3664(f)(1)(B).  Nothing in the statute provides that the defendant's liability ends with any change in the victim's circumstances.  At the same time, a victim is not required to accept restitution, as "[n]o victim shall be required to participate in any phase of a restitution order."  *Id.* § 3664(g)(1).   To reconcile the mandatory nature of restitution with this provision, the statute must admit some flexibility as to where restitution money goes if the victim disclaims participation.

One other section of the MVRA bears analysis. Section 3664(g)(2) allows the victim to "at any time assign [its] interest" to the Fund "without in any way impairing the obligation of the defendant to make such payments."  *See Turner*, 312 F.3d at 1144 (observing that a victim's assignment does not alter the defendant's restitution liability).  It makes sense that the statute lays out the rights

of the third-party victim since, without an explicit provision, the third party would be left up in the air as to the ability to assign. But this provision does not extend beyond the victim's ability to assign and cannot not be read to constrain the district court's authority to redirect payments.

In *Johnson*, one of the defendants made the same argument Hankins makes here—namely, that because § 3664(g)(2) gives victims authority to assign to the Fund, the statute should be read as cabining the district court's authority. Rejecting that approach, the Second Circuit was clear: "We disagree. Although § 3664(g)(2) authorizes victims to make such an assignment, it does not *preclude* the Court from doing so." 378 F.3d at 245 (emphasis added). The statute's silence gives us flexibility to construe the scope of the district court's authority. Indeed, as the Supreme Court counsels, "There is a basic difference between filling a gap left by Congress' silence and rewriting the rules that Congress has affirmatively and specifically enacted." *Mobil Oil Corp. v. Higgenbotham*, 436 U.S. 618, 625 (1978). Here, we are doing the former—filling a gap in the MVRA.

Finally, allowing the district court to redirect restitution serves the MVRA's compensatory and punitive purposes. *See William A. Graham Co. v. Haughey*, 646 F.3d 138, 144 (3d Cir. 2011) (noting that federal courts filling statutory gaps "must do so with the statute's policy goals in mind"). The MVRA's legislative history describes the statute's dual goals as "ensur[ing] that . . . victims . . . receive the restitution that they are due" and that "the offender . . . pays the debt owed to the victim *as well as to society*." S. Rep. No. 104-179, at 12 (1995) (emphasis added). As we emphasized in *United States v. Rich*, "we have held repeatedly that restitution payments have both compensatory and penal purposes." 603 F.3d 722, 729 (9th Cir. 2010)

(internal quotation marks and citation omitted); *see also United States v. Green*, 722 F.3d 1146, 1150 (9th Cir. 2013) (describing the MVRA as having "hybrid" purposes). Redirecting the defendant's restitution payments to the Fund supports the MVRA's compensatory goal of supporting crime victims, even if the victims compensated are not the defendant's actual victims.   This solution also serves the MVRA's penal purpose of requiring the defendant to "pay[] the debt owed to . . . society."  S. Rep. No. 104-179, at 12.

Conversely, adopting an interpretation that prohibits the district court from redirecting restitution to the Fund would thwart the goals of the MVRA.   Hankins's sentence explicitly directs her to make restitution payments payable to "the U.S. District Court Clerk, for transfer to the payee." *See* 18 U.S.C. § 3611 (stating that restitution payments may be directed to the Clerk of the Court).  Because Hankins is obligated to continue paying restitution under her sentence, absent redirection, her payments would have nowhere specific to go.  The funds would revert at some point to the U.S. Treasury's federal unclaimed property fund[5] and eventually may even escheat to the state. *See United States v. Klein*, 303 U.S. 276, 281–82 (1938) (affirming Pennsylvania's escheat of unclaimed money deposited in the registry of a federal court even though the money had already been transferred to the U.S. Treasury).  But, in any event, the funds would accrue without supporting any victims of crime.  Surely Congress did not intend this result. *See United States v. Webster*, 108 F.3d 1156, 1158 (9th Cir.

---

[5] Under the Guide to Judiciary Policy, after the passage of time unclaimed restitution payments are transferred to the Treasury, either to the Unclaimed Funds or the Forfeitures of Unclaimed Money and Property Fund.  13 Guide to Judiciary Policy §§ 1020.10.30, 1020.30.20 (2013); *see also* 28 U.S.C. § 2042.

1997) (opting for the construction that would avoid "undesirable results").

We are not persuaded by the two circuits that have determined that a district court cannot redirect restitution. *See United States v. Speakman*, 594 F.3d 1165, 1175–76 (10th Cir. 2010); *United States v. Pawlinski*, 374 F.3d 536, 541 (7th Cir. 2004).

To begin, the court in *Speakman* sidesteps the MVRA and invents language that permits a victim to dictate whether the defendant will pay restitution at all. When the victim in *Speakman* declined restitution prior to sentencing, the district court ordered the defendant to pay restitution to the Fund. 594 F.3d at 1168–69. On appeal, the Tenth Circuit held that "the MVRA is expressly made subject to the victim accepting restitution. In other words, construing §§ 3663A and 3664(g)(1) together means that restitution payments under the MVRA are mandated only when the victim accepts them." 594 F.3d at 1177. According to *Speakman*, ordering restitution when a victim declines it "punishes the defendant without in any way compensating the victim" and renders the policy supporting the MVRA "simply inapplicable." *Id.* at 1178–79. This analysis flatly contradicts both the mandatory nature of restitution and the conclusion of multiple circuits that restitution under the MVRA does not rest on the victim's concurrence. Victims cannot control the applicability of a penal statute. *See Bearden*, 274 F.3d at 1041.

*Pawlinski* involved a politician who was ordered to pay restitution to defrauded campaign contributors. 374 F.3d at 537. When only a handful of contributors claimed the money, the district court directed the remaining balance to the Fund, although Pawlinski suggested it be restored to his campaign fund. *Id.* at 538. In contrast to the Second Circuit

and our view, the Seventh Circuit deemed the revised sentence "illegal" and stated that the district court "ignore[d] the statutory limits" of the MVRA. *Id.* at 540. The Seventh Circuit read the statute to permit an award to non-victims in only two situations: first, when restitution is imposed pursuant to a plea agreement that directs restitution to non-victims and, second, when the victim assigns its rights to the Fund. *Id.* at 539–40. The Seventh Circuit did not address the practical effect of its holding; it simply said that "[w]hat happens to the money" would be an issue for the federal and state governments. *Id.* at 541.

Neither *Speakman* nor *Pawlinski* affects our reasoning. We do not view the redirection of restitution as violating the rule that a district court cannot order restitution absent explicit statutory authority. *See United States v. Gossi*, 608 F.3d 574, 577 (9th Cir. 2010). No one disputes that the district court entered a valid restitution order at the outset. The process of deciding where to send restitution payments already ordered is distinct from the authority to order restitution in the first instance. And we do not interpret the MVRA's silence regarding redirection as a limit on the district court's power to craft a solution that is consistent with the purposes of the MVRA and the Fund and that fosters the compensatory and punitive goals of the statute. *See Johnson*, 378 F.3d at 245.

In short, Hankins cannot extinguish her restitution sentence through settlement with the victim's assignee, Horton. Once Horton disclaimed further interest in restitution, redirecting restitution to the Fund was within the district court's power.

**AFFIRMED.**