RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0189p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

                    *Plaintiff-Appellee,*

    *v.*

JOHN JEROME O'HARA,

                    *Defendant-Appellant.*

Nos. 23-5695/5720

─────────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:18-cr-00176-1—Danny C. Reeves, Chief District Judge.

Decided and Filed:  August 20, 2024

Before:  BOGGS, COOK, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Rachel D. Yavelak, BALDANI LAW GROUP, Lexington, Kentucky, for Appellant.  John M. Spires, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

─────────────────

## OPINION

─────────────────

NALBANDIAN, Circuit Judge.  After pleading guilty to defrauding his own mother, John O'Hara was ordered to pay over $300,000 in restitution to his mother's estate.  One problem—O'Hara's mother had passed away by the time of sentencing, leaving O'Hara the sole beneficiary of her estate.  Four years later, the district court amended the judgment and directed O'Hara to pay the federal Crime Victims Fund instead of the estate.  O'Hara appealed, claiming

the district court had no authority to modify the judgment. We agree, so we REVERSE and REMAND.

## I.

In February 2019, John O'Hara pleaded guilty to wire fraud and bank fraud for misappropriating funds from his mother, Sally Thrush. She died a few weeks later, leaving O'Hara as the sole beneficiary of her estate. By the time of sentencing in May 2019, both parties and the court knew that Thrush had passed away and that O'Hara was "likely" her estate's sole beneficiary. R.20, U.S. Sent. Memo., p.6, PageID 74; *see also* R.21, Def.'s Sent. Memo., p.3, PageID 80; R.35, Sent. Tr., p.36, PageID 223. Despite knowing the money would therefore likely go to O'Hara, the government apparently raised no objection to naming Thrush's estate as the beneficiary. The district court sentenced O'Hara to twenty-six months in prison and ordered him to pay $332,149.95 in restitution to Thrush's estate.[1]

Fast forward to 2023. O'Hara has paid no restitution since his release from prison in May 2021, prompting the district court to ask the United States for "its position regarding whether the defendant should be discharged from his existing restitution obligation." R.26, Order, p.1, PageID 165. The government requested that the court substitute the Crime Victims Fund "in place of the Estate of Sally Thrush." R.28, U.S. Position Stat., p.1, PageID 168.

---

[1]Sometime between sentencing and 2023, Thrush's probate estate closed. But both parties agree this posed no obstacle to O'Hara making payments. *See* R.28, U.S. Position Stat., p.1, PageID 168 ("The United States understands that Ms. Thrush's probate estate has now been closed, and [O'Hara] is the sole beneficiary of her estate, meaning that any payments to the estate would be routed to [O'Hara]."); R.36, Def.'s Resp., pp.2, 4, PageID 232, 234 ("The Estate has been and can officially be reopened. . . . The Estate has not disclaimed or attempted to assign its[] interest, and it can still receive restitution payments.").

We also note that under Kentucky law § 381.280(1), when a beneficiary under a will "victimizes the decedent by the commission of any felony under KRS Chapter 209 and . . . is convicted," he "forfeits all interest in and to the property of the decedent, including any interest he . . . would receive." Chapter 209 also explains that "[a]ny person convicted of a felony under this chapter shall be disqualified from being appointed" as "personal representative" of the "victim's estate." Ky. Rev. Stat. Ann. § 209.115(1). Among other things, such "felonies" include any person who knowingly, wantonly, or recklessly "exploits an adult, resulting in a total loss to the adult of more than three hundred dollars." Ky. Rev. Stat. Ann. § 209.990(5)–(6).

We recognize that § 381.280(2) describes certain exclusions limiting the applicability of the forfeiture provision, and accordingly we leave the statute's application to state courts. We only note that such a statutory scheme seems to fit the occasion and reiterate that it would be in the power of the probate court to apply its terms were the estate to be reopened and receive any money.

O'Hara countered that "the restitution obligation" should be "discharged." R.36, Def.'s Resp., p.1, PageID 231.

The district court construed the government's response as "a motion to amend the Judgment," and granted the request, directing O'Hara "to pay restitution to the Crime Victims Fund." R.38, Mem. Order, p.3, PageID 242; *United States v. O'Hara*, No. CV 5:18-176-DCR, 2023 WL 4636882, at *2 (E.D. Ky. July 19, 2023). The court thought that permitting O'Hara "to effectively receive his own restitution" would be contrary to Congress's intent to require restitution to crime victims. R.38, p.2, PageID 241. And that under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, a perpetrator of a crime "*cannot be his own victim.*" *Id.* (quoting *In re Wellcare Health Plans, Inc.*, 754 F.3d 1234, 1239 (11th Cir. 2014)). In ordering the substitution, the court quoted the MVRA: "If a victim is deceased or incapacitated, 'any other person appointed as suitable by the court[] may assume the victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.'" *Id.* at pp.1–2, PageID 240–41 (quoting 18 U.S.C. § 3663A(a)(2)).

O'Hara moved to correct the sentence under Federal Rule of Criminal Procedure 35(a), arguing that the court had no authority to modify the 2019 judgment four years after it became final. The court denied this motion, and O'Hara timely appealed.[2]

## II.

This case raises two questions. First, did the district court have the authority to modify its final judgment to substitute a new payee? Second, if the court could modify its judgment, was the court permitted to direct restitution payments to the Crime Victims Fund? The answer to the first question is no, so we need not reach the second.[3]

---

[2]O'Hara filed a notice of appeal before the court ruled on his motion to correct the sentence, so the court denied his Rule 35(a) motion as moot. O'Hara then filed a notice of appeal from that ruling too, and we consolidated his appeals.

[3]We take no position on if or when it is appropriate to substitute the Crime Victims Fund as the payee, which is currently the subject of a circuit split. *Compare United States v. Johnson*, 378 F.3d 230, 244–46 (2d Cir. 2004), *and United States v. Hankins*, 858 F.3d 1273, 1279 (9th Cir. 2017), *with United States v. Pawlinski*, 374 F.3d 536, 539–40 (7th Cir. 2004), *and United States v. Speakman*, 594 F.3d 1165, 1179 (10th Cir. 2010). We leave those questions for another day.

We review de novo the district court's legal determination that it could amend a judgment. *United States v. Hall*, 661 F.3d 320, 322 (6th Cir. 2011); *see also United States v. Houston*, 529 F.3d 743, 748 (6th Cir. 2008). Despite generally quoting the MVRA, the district court never explicitly stated what statutory provision gave it the ability to "amend the Judgment." R.38, p.3, PageID 242. It seemed to rely on 18 U.S.C. § 3663A(a)(2). And that's what the government argues now.

When a court imposes a sentence, "it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013) (per curiam); *see also United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010); *see generally* 18 U.S.C. § 3582. And a restitution order "is a part of one's sentence." *United States v. Winans*, 748 F.3d 268, 271 (6th Cir. 2014) (citation omitted). So if a court wants to change a restitution order, it must point to express statutory authorization to do so. *See Hammond*, 712 F.3d at 335; *United States v. Harvey*, 20 F.4th 71, 75 (1st Cir. 2021).

Only a few statutory provisions—mainly in 18 U.S.C. § 3664—expressly allow modification in this context. *See* 18 U.S.C. § 3663A(d) ("An order of restitution under this section shall be issued and enforced in accordance with section 3664."). For example, § 3664(o) lists a handful of ways a restitution order may be altered.

Specifically, § 3664(o) states that a "sentence that imposes an order of restitution is a final judgment notwithstanding" certain situations. A final restitution order may be "corrected under Rule 35 of the Federal Rules of Criminal Procedure," "appealed and modified under section 3742," "amended" if the victim's losses are not ascertainable at sentencing, "adjusted" due to changed economic circumstances, or modified if the defendant is "resentenced." 18 U.S.C. § 3664(o)(1)–(2). None of these apply here. So the district court could not use them to amend the judgment. *See Harvey*, 20 F.4th at 78 (overturning a district court's modification of a judgment when "none of the avenues for modifying a sentence imposing a restitution order provided in 18 U.S.C. § 3664(o) appl[ied]").

Nevertheless, the circuits are split on whether § 3664(o)'s list is exhaustive of the ways a restitution order may be modified after a judgment. *See United States v. Phillips*, 9 F.4th 382,

385 (6th Cir. 2021) (collecting cases). The *Phillips* court, over a dissent, found that 18 U.S.C. § 3612(f)(3) could be used to modify a judgment because "[n]othing in" the statute's "language limits its applicability to the initial sentencing." *Id.* at 383. In so doing, the court rejected the government's argument that § 3664(o) "reflects Congress's intent to create an exhaustive list of the ways that a restitution order can be modified post-sentencing." *Id.* at 384.

The government now implicitly leans into *Phillips*'s reasoning and contends that the district court correctly relied on 18 U.S.C. § 3663A(a)(2) to amend the judgment. Appellee Br. at 8. Because Thrush is "deceased," the district court thought the MVRA allowed it to designate "any other person" to "assume the victim's rights under this section." 18 U.S.C. § 3663A(a)(2). The court thought this language gave it the ability to amend the judgment and substitute the Fund as payee.

But this statutory provision gives no such authority. The MVRA requires courts, "when sentencing a defendant," to ensure that victims of certain crimes receive restitution. 18 U.S.C. § 3663A(a)(1). And because Thrush was "deceased" at the time of the original 2019 sentencing, the district court used § 3663A(a)(2) to list Thrush's estate as the victim, not Thrush. R.24, p. 6, PageID 162. So it seemed aware that this provision applies at sentencing, not that it applied later as an independent ground.[4] And for good reason. Unlike § 3664(o), § 3663A does not authorize a court to modify a judgment. The text shows that § 3663A(a)(2) defines "victim" but does nothing to change § 3663A(a)(1)'s command that the MVRA applies "when sentencing." And without the requisite text, the court "does not have the authority to change or modify that sentence." *Hammond*, 712 F.3d at 335.

The district court reasoned that "[a]llowing a perpetrator to effectively receive his own restitution would have the effect of nullifying a court's restitution order and circumventing Congress' intent to require mandatory restitution under the MVRA." R.38, p.2, PageID 241. Moreover, the statute states that "in no event shall the defendant be named as such representative or guardian." 18 U.S.C. § 3663A(a)(2). And although O'Hara was not directly named as the

---

[4]What's more, the government did not object to the payments going to Thrush's estate despite telling the court it knew he was "the sole beneficiary of her estate, meaning that any payments to the estate would be routed" to O'Hara. R.28, p.1, PageID 168.

recipient of his own restitution in the original order, that could be considered the practical effect of that order.

So this is a case where a court may be tempted to elide the statute's text to do "what makes practical sense within the spirit and confines of the MVRA." *United States v. Hankins*, 858 F.3d 1273, 1278 (9th Cir. 2017). But even given the MVRA's laudable goals, a court does not have "discretion to ignore the statutory limits on" modifying a final restitution order. *United States v. Pawlinski*, 374 F.3d 536, 540 (7th Cir. 2004). Such a modification requires an express "statutory basis," *see United States v. Speakman*, 594 F.3d 1165, 1179 (10th Cir. 2010); *Hammond*, 712 F.3d at 335, a basis that § 3663A(a)(2) does not provide. Granted, the statute's "in no event" language may appear to come close. 18 U.S.C. § 3663A(a)(2). But even this, when read in context, at most implies that something may be done when circumstances change— such as a victim becoming "incompetent, incapacitated, or deceased," *id.*—in a way that was not foreseen by the court at sentencing.[5]

Along these lines, the government tries to invoke the "ancient equity maxim that no one should benefit from his own wrongdoing" to argue that allowing O'Hara's judgment to stand would essentially lead to absurd results that no legislature could have intended. Appellee Br. at 12 (quoting *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 790 (6th Cir. 2020) (citation omitted)). This echoes the district court's reasoning below. *See* R.38, p.2, PageID 241. True, this maxim has a long history in the backdrop of the law. *See, e.g.*, *Riggs v. Palmer*, 22 N.E. 188, 189–91 (N.Y. 1889). But background principles of equity do not displace statutory text. Another historic principle tells us that "equity follows the law." *Kenyon v. Automatic Instrument Co.*, 160 F.2d 878, 884 (6th Cir. 1947) (quoting Pomeroy's Equity Jurisprudence, 4th ed., § 1577); *see also Magniac v. Thomson*, 56 U.S. 281, 299 (1853). And we have repeatedly said that final judgments cannot be amended absent express statutory authority.

---

[5]This language would still need to be read in the context of § 3663A as a whole, which begins with the declaration that "the court shall order" restitution payments to the victim or the victim's estate "when sentencing." 18 U.S.C. § 3663A(a)(1). So it's not clear that the text permits modifying a sentence even if the victim was alive at the time of sentencing but later passes away, as in the case of *United States v. Drews*, 598 F. Supp. 3d 611, 612–13 (E.D. Mich. 2021). But at least that case presents a better argument for changed circumstances requiring a modification, *perhaps* under equitable principles. But we need not opine on that scenario now because that's not our case. Here, the court and parties knew Thrush was deceased at the time of sentencing but nevertheless failed to name a different payee in the restitution order.

*See United States v. Ross*, 245 F.3d 577, 585–86 (6th Cir. 2001); *United States v. Houston*, 529 F.3d 743, 748 (6th Cir. 2008); *Curry*, 606 F.3d at 326; *Hammond*, 712 F.3d at 335; *United States v. Alexander*, 951 F.3d 706, 707 (6th Cir. 2019) (order).**[6]**

Indeed, it was likely with the "ancient" maxim in mind that Congress enacted the MVRA to give sentencing courts a way to make sure that "in no event" would the wrongdoer "assume" his "victim's rights." 18 U.S.C. § 3663A(a)(2). But Congress also said this would apply "when sentencing." *Id.* § 3663A(a)(1). And Congress could have written the law differently to allow for modifications. *See, e.g.*, *id.* § 3664(o)(1). So the district court had a statutorily authorized way to avoid this situation when it first sentenced O'Hara in 2019 when it had all the facts before it to avoid this predicament. And the government too knew that O'Hara was likely the sole beneficiary of his mother's estate. *See* R.20, p.6, PageID 74; R.28, p.1, PageID 168. But now that the opportunity has passed, changing the statute by judicial fiat is not justified.

So although we are sympathetic to the district court's position, we hold that 18 U.S.C. § 3663A(a)(2) does not authorize a district court to alter a restitution order, post judgment, to change the payee—at least in the circumstances of this case.

## III.

For the above reasons, we reverse and remand.

---

**[6]**Moreover, even in those instances when courts have, in effect, altered statutes to avoid absurd results, they typically do so by adding or deleting a word or two, not by doing what we would need to do here. *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 238 (2012) (explaining that courts have avoided absurdity only "by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error," for example, "*losing party* instead of *winning party*"); *see also* 1 William Blackstone, *Commentaries* *60 ("[W]here words bear . . . a very absurd signification, if literally understood, we must *a little* deviate from the received sense of them." (emphasis added)). Any revisions beyond simple corrections require Congress to act, not us.